**UNITED STATES**

v.

**Carl W. PLAYER, Seaman Radioman, U. S. Coast Guard.**

**CGCMS 23120.**
**Docket No. 785.**

U. S. Coast Guard Court of Military Review.

Sentence Adjudged 2 July 1974.

Decided 28 Nov. 1975.

Appearances: Military Judge: CDR Floyd D. Hunter, USCG. Trial Counsel: LT John P. Manard, Jr., USCGR. Defense Counsel: LT Allan L. Durand, USCGR. Individual Defense Counsel: LT Tyrone E. May, USCGR. Individual Appellate Counsel: Tom Nunziato, Esq.

For the United States: LT G. Alex Weller, USCGR.

## DECISION

PER CURIAM:

Appellate contends that the substitution of one officer for another as a member of this court was not the act of the commanding officer and, as a result, that the court lost jurisdiction and its judgment is void. We do not accept this conclusion.

Trial herein commenced on 13 June 1974 with the usual Article 39(a), 10 U.S.C. § 839(a) session before the military judge without the presence of the appointed members. A continuance was granted to enable the accused to obtain representation by an individual defense counsel. The trial began anew on 2 July 1974 with another Article 39(a) session. Almost at once, the individual defense counsel presented a request in writing for trial by judge alone, which the judge approved. Thereafter the trial proceeded to its conclusion on the same day.

Also on 2 July 1974 there had been issued what appeared on its face to be an amendment to the convening order, substituting one member for another. At the opening of the session, the trial counsel duly referred to this amendment to the convening order. The basic convening order bore the signature of the commanding officer. The amending order, under the same command letterhead, bore the signature of another officer and the additional word "Acting."

The contention here is that the amending order was unlawfully signed by one who was not in fact the acting commanding officer, and consequently that the court was illegally constituted and without jurisdiction.

■ In our view the question of whether a new member was or was not lawfully placed on the court is moot. The instant court-martial was convened by a commanding officer authorized to convene a special court-martial by Article 23(a)(5) UCMJ. Necessarily, he appointed three members; he also appointed a military judge to form the court provided for by Article 16(2)(B)

UCMJ. Initially valid at its creation, the court-martial had jurisdiction to proceed as it did until the judge approved the request for trial by judge alone. At that moment, the court metamorphosed into a special court-martial consisting of only a military judge, provided for by Article 16(2)(C) UCMJ. It had jurisdiction to, and did, proceed in that form to the conclusion of the trial. No proceedings of the special court-martial were conducted in the presence of any members, nor was the presence of members necessary to the validity of any of the proceedings of the court. With regard to the factual occurrences of the trial, this special court-martial had jurisdiction from beginning to end.

■ The judge found the accused guilty, pursuant to his plea, of a single offense of AWOL for 29 days—an offense by itself not punishable with a bad conduct discharge. Two previous special court-martial convictions, also for AWOL, authorized imposition of the punitive discharge. We note that this accused completed a four-year enlistment in the Coast Guard and received an honorable discharge in July 1968. His current enlistment, begun on 8 February 1972, was not a success. Stipulated testimony indicates that the commanding officer applied to Headquarters for Player's discharge under other than honorable conditions, but Headquarters authorized only an honorable or a general discharge. It was stipulated further that the commanding officer, disclaiming any intention to influence the court, stated that he would act on the authorization and issue an administrative discharge, if the court did not impose a punitive discharge.

■ Thus, as of 2 July 1974, the accused was under sentence of a bad conduct discharge and there was also extant an authorization to discharge him administratively under honorable conditions. On 10 July 1974 he was sent home on leave awaiting appellate review of his court-martial. The convening authority approved the sentence on 25 September 1974. The legal officer on the staff of the supervisory authority did

not submit the mandatory written review of the case until 24 July 1975. Thereafter, on 19 August 1975, the supervisory authority approved the sentence and forwarded the record of trial for review by this court. More than a year had elapsed since the accused had been sent home.

Upon consideration of all the facts and circumstances disclosed by the record, including and in addition to those mentioned in the two preceding paragraphs, our Court has determined, on the basis of the entire record, that the bad conduct discharge should not be approved as a part of the sentence. Pursuant to Article 66(c) UCMJ, the findings of guilty and only so much of the sentence as provides for reduction to Seaman Recruit are affirmed.

ROSENWASSER, MAGUIRE BRIDGMAN, Jr., and LYNCH, Appellate Military Judges, concurring.

LYNCH, Judge, concurring:

This case is another in the continuing saga involving the question of post-trial delays.

This court in *United States v. Ward*, 48 C.M.R. 588 (1974), recognized that the Court of Military Appeals in 1973 had not afforded any relief for post-trial delays of 180 days, 212 days, or 244 days (*United States v. Timmons*, 22 U.S.C.M.A. 226, 46 C.M.R. 226; *United States v. Gray*, 22 U.S.C.M.A. 443, 47 C.M.R. 484; and *United States v. Jefferson*, 22 U.S.C.M.A. 554, 48 C.M.R. 39), however, held that the 774 day delay in *Ward*, of which 650 were attributable to the supervisory authority, "made a mockery of the appellate review process provided for by the Uniform Code of Military Justice," and that "it violated due process of law." 48 C.M.R. at 589. The findings and sentence were therefore disapproved and the charges dismissed.

The present case involves a 413 day post-trial delay, of which 328 days is attributable to the supervisory authority. Thus, the post-trial delay in this case is more than half of that in *Ward* and is almost twice as much as that in *Gray* and *Jefferson*, placing this case in between those which have afforded no relief and that which granted total relief by setting aside the findings and sentence.

The Court of Military Appeals addressed the problem of pretrial delay when a defendant is in confinement in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), and established a presumption of prejudice that arises after 90 days. Failure on the part of the government to rebut the presumption requires the dismissal of the charges. The Court of Military Appeals has also addressed the question of post-trial delay pending the convening authority's action in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 138, 48 C.M.R. 751 (1974) by stating, similar to *Burton*, that if an accused is in post-trial confinement and the convening authority does not take action within 90 days a presumption of prejudice will arise. Failure on the part of the government to overcome this presumption requires disapproval of the findings and sentence and a dismissal of the charges.

Thus, it is clear that the continued confinement of an accused for more than 90 days awaiting trial or the convening authority's action is presumptively prejudicial, a substantial deprivation of rights, to the extent that the drastic remedy of dismissal of findings and sentence must be imposed in the absence of the government bearing a very heavy burden of overcoming the presumption.

The question that remains unanswered to date deals with the problems of those cases in which there is substantial post-trial delay when the accused is not in confinement for more than 90 days, and those cases in which a substantial majority of the delay is attributable to the supervisory authority following action by the convening authority.

It is my opinion that the drastic remedy of a disapproval of valid findings and the dismissal of charges should not be resorted to except in those cases where demonstrable and substantive prejudice to the defendant is present as a result of post-trial delay or in flagrant cases involving deprivation of due process such as that found in *Ward*,

**1118**

supra. The present case fits neither of these exceptions. I believe, however, that the military justice system and the Coast Guard ought not to condone or tolerate unexplained, apparently unnecessary, post-trial delays of the magnitude found in this case, i. e. 413 days, particularly where a substantial part of this delay is attributable to the supervisory authority—328 days in this case.

It is my opinion that this Court should, as the Court of Military Appeals has done, provide guidance in the form of a "rule" to solve the problem of post-trial delays. I can conceive of very few cases, or circumstances, where a supervisory authority could not with reasonable diligence take action within six months of the time a record of trial, as acted on by the convening authority, has been received. Therefore, I believe this Court should formulate a "rule", analogous to that of *Burton* and *Dunlap,* to the effect that a presumption of prejudice will arise in any case in which a supervisory authority fails to take action within six months of the time the record of trial, as acted upon by the convening authority, is received. Unlike *Burton* and *Dunlap,* this presumption would not be contingent upon confinement of an accused; and unlike *Burton* and *Dunlap* the prejudice arising under this presumption would only extend to a disapproval of the sentence. The government, and society, should not be deprived of an otherwise valid conviction; on the other hand however, the government should be penalized, or stimulated, depending upon how one looks at it, through a disapproval of the sentence in those cases where a supervisory authority without apparent reason or justification "sits on a case" for more than six months.