**UNITED STATES**

**v.**

**David F. OWENS, Seaman Recruit, U. S. Coast Guard.**

**CGCMS 23235.**

**Docket No. 798.**

U. S. Coast Guard Court of Military Review.

Sentence Adjudged 7 Feb. 1975.

Decided 10 Sept. 1976.

Trial Counsel: LT Stephen E. Hart, USCGR.

Defense Counsel: LT Stephen J. McCleary, USCG, and LT Douglas W. Elston, USCGR.

Appellate Defense Counsel: LT Joanne F. Horvitz, USCGR.

For the United States: LT Paul J. Prokop, USCG.

OPINION OF THE COURT

LYNCH, Judge:

I

After pleas of not guilty, a special court-martial, consisting of members, found the accused guilty of an unauthorized absence from 26 February 1974 to 17 December 1974, and of breaking restriction on 26 February 1974. The two offenses were considered as multiplicious, and the accused was sentenced to a bad conduct discharge with no other forms of punishment adjudged. Sentence was announced on 7 February 1975, and the accused was sent home in a "leave without pay" status awaiting appellate review on 4 March 1975. The record of trial was authenticated on 17 June 1975; the convening authority's action was taken on 23 July 1975; and the action of the supervisory authority was on 20 February 1976.

The accused contends that the 378 days that elapsed between the date of sentencing and the date of the action of the supervisory authority constitutes prejudicial error and urges this Court to set aside the punitive discharge. Appellate defense counsel draws a close parallel between this case and the case of *United States v. Player*, 51 C.M.R. 584, 2 M.J. 1115 (C.G.C.M.R.1975) in which this Court set aside a punitive discharge in part due to an unexplained post-trial delay of 413 days between the date of sentencing and the action of the supervisory authority. Appellate defense counsel

urges this Court to adopt, as a rule of law, the "presumption of prejudice rule" set forth in the concurring opinion in *Player,* supra at 586, 2 M.J. at 1117.

Initially, it should be noted that the result in *Player* was not attributable solely to the excessive, unjustified post-trial delay. The Court stated:

"Upon consideration of all the facts and circumstances disclosed by the record, including and in addition to those mentioned in the two preceding paragraphs, our Court has determined, *on the basis of the entire record,* that the bad conduct discharge should not be approved as a part of the sentence." *Player* supra at 586, 2 M.J. at 1117 (emphasis added.)

Secondly, should this Court follow the lead of the Court of Military Appeals in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971); *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974); and *United States v. Brewer,* 24 U.S.C.M.A. 47, 51 C.M.R. 141, 1 M.J. 233 (1976) and judicially create a "presumption of prejudice rule" pertaining to excessive post-trial delays not involving the confinement of an accused, any such rule would be prospective in operation and not govern the instant case.

Therefore, before this Court can afford relief to the accused based upon post-trial delay, it must be shown that the accused suffered substantial prejudice as the result of the 378 day delay between the date of sentencing and the date of the action of the supervisory authority.

Sixty days after the conclusion of the trial, the defense counsel submitted a petition for clemency to the convening authority asking that the bad conduct discharge be disapproved, or at least suspended and the accused processed for an administrative discharge. Attached to the petition were several letters, affidavits, and records pertaining to the accused and his background, reflecting a considerable amount of effort on the part of the defense counsel in his representation of the accused.

Sixty-four days later, or 124 days after the conclusion of the trial, the defense counsel submitted a Supplemental Brief complaining of the excessive delay in the processing of the record, and setting forth his assertions of specific prejudice to the accused resulting from the delay. The defense counsel pointed out that he had not as yet received a copy of the record of trial, that he was scheduled to be discharged from the Coast Guard on 16 June 1975, and asked for the appointment of a new defense counsel in the event the convening authority did not disapprove the punitive discharge.

One day *after* the defense counsel was discharged from the Coast Guard, the record of trial was authenticated by the military judge. It took 130 days, over four months, to prepare and authenticate a record of trial consisting of 77 pages of transcript, some copies of service record entries, two brief letters by the accused, two "work sheets", and two one-page motions.

The convening authority took action on the record of trial on 23 July 1975, 166 days after sentencing; and in his transmittal letter forwarding the record of trial to the supervisory authority on 28 July 1975, he noted that the "accused was no longer represented by counsel since discharge of defense counsel on 16 June 1975."

Nevertheless, no action was taken by anyone to appoint a new, substitute, defense counsel for the accused until 14 January 1976. This substitute defense counsel was relieved "before (he) had acted in any way in the case," and a new defense counsel finally appointed on 29 January 1975, the day *after* the staff legal officer had completed preparation of his post-trial review to the supervisory authority.

Thus, the accused was unrepresented by counsel from 16 June 1975, until 29 January 1976, a period of 228 days. This period of time began the day *before* the military judge authenticated the record of trial and continued until the day *after* the staff legal officer prepared his post-trial review and advice to the supervisory authority.

Paragraph 83(a), Manual for Courts-Martial, 1969 (Rev.), directs that records of trial

of special courts-martial in which a bad conduct discharge is adjudged shall be "prepared and disposed of in accordance with the rules prescribed in 82 for a record of trial by general court-martial." Paragraph 82(e) states: "When undue delay will not result, the trial counsel should permit the defense counsel to examine the record before it is forwarded to the convening authority." In this case, of course, it was impossible to permit the defense counsel to examine the record since it had not even been authenticated at the time the defense counsel was discharged from the Coast Guard, and at the time the record of trial was authenticated the accused was unrepresented by counsel.

Article 38(c), UCMJ, 10 U.S.C.A. § 838(c), states:

> "In every court-martial proceeding, the defense counsel may, in the event of conviction, forward for attachment to the record of proceedings a brief of such matters as he feels should be considered in behalf of the accused on review, *including any objections to the contents of the record which he considers appropriate.*" (Emphasis added.)

In the instant case the discharge of the accused's counsel prior to the authentication of the record, and the failure to promptly appoint a new counsel to represent him, effectively deprived the accused of the opportunity to submit a post-trial brief pursuant to Article 38(c).

It is noted that prior to his discharge, the defense counsel did submit a "Supplemental Brief" to the convening authority. The purpose of this "Brief" was, however, to complain of the unexplained, excessive delay in the preparation of the record of trial, and to call to the convening authority's attention the fact that the defense counsel was about to be discharged from the Coast Guard, and that the accused would be unrepresented at a critical time in the post-trial processing of the case. The defense counsel made specific reference to the right of the accused to submit a post-trial brief pursuant to Article 38(c), UCMJ, and the fact that this could not be done without

first examining the record of trial. Thus, the "Brief" submitted by the defense counsel cannot be construed as a submission under Article 38(c), UCMJ, but more appropriately as a plea for relief from the excessive delay and the prejudice he perceived on behalf of the accused as a result of the delay.

The Court of Military Appeals was recently faced with a case involving the failure of the government to furnish a copy of the record of trial to the accused prior to its being forwarded to the convening authority. *United States v. Cruz-Rijos*, 24 U.S.C.M.A. 271, 51 C.M.R. 723, 1 M.J. 429 (1976). After stating that the language of Article 54(c), UCMJ, was clear in providing that a copy of the record of proceedings of each general and special court-martial shall be given to the accused as soon as it is authenticated, the Court stated:

> "The Government erred in failing to provide the appellant with a copy of the record of trial 'as soon as it [was] authenticated' under the plain language of the statute. The Code clearly contemplates that the transcript will be served on the accused well before action by the convening authority since such action may not precede authentication." (*U. S. v. Cruz-Rijos*, supra, at 726, 1 M.J. at 432).

It is noted in the instant case that the accused did not receive a copy of the authenticated record until 28 January 1976, some 189 days *after* the action of the convening authority, and some 225 days after the record had been authenticated. It is also noted, as discussed above, that a copy of the authenticated record of trial could not be served on the accused's counsel since he was unrepresented by counsel during the entire time between the authentication of the record of trial and his receipt of the record.

The absence of effective representation by counsel for 228 days, and the failure to serve a copy of the record of trial on the accused "as soon as it was authenticated," pursuant to Article 54, UCMJ, are both clearly elements of prejudice to the accused. Thus the question posed earlier of whether

or not the accused suffered substantial prejudice as the result of the 378 day delay between the date of sentencing and the date of the action of the supervisory authority must be answered in the affirmative.

Therefore, upon consideration of all the facts and circumstances disclosed by the record, including and in addition to those mentioned in this opinion, our Court has determined, on the basis of the entire record, that the bad conduct discharge should not be approved. Pursuant to Article 66(c), UCMJ, the findings of guilty are affirmed, and the sentence of a bad conduct discharge is disapproved. Cf. *United States v. Player*, 51 C.M.R. 584, 2 M.J. 1115 (C.G.C.M.R.1976); and *United States v. Ward*, 48 C.M.R. 588 (C.G.C.M.R.1974).

II

Judge Maguire and Chief Judge Rosenwasser do not agree with Judge Bridgman and me that this Court should judicially fashion a remedy for cases involving excessive, unexplained, unjustified post-trial delay, but not involving post-trial confinement of the accused exceeding 90 days, leaving us equally divided on the issue. Judge Young was not available to participate in the consideration of this case.

*United States v. Ward*, supra, involved an unjustified post-trial delay of 774 days. *United States v. Player*, supra, involved an unjustified post-trial delay of 413 days. In a recent case before this Court we noted "with disapprobation the fact that it took 197 days for the convening and supervisory authorities to review and take action on the record of trial." *United States v. Jackson*, (C.G.C.M.S. 23185, June 24, 1976). The instant case, as noted above, involves an unjustified post-trial delay of 378 days. trial delay of 378 days.

Thus, this is the fourth case in less than two and one-half years to come before this Court in which the period between the sentencing of the accused and the action of the supervisory authority has been in excess of six months. In none of the cases was the excessive post-trial delay justified or explained.

The Court of Military Appeals recently stated: "(S)peedy appellate disposition has been and remains a matter of particular concern to this Court, and *it is of substantial importance in the administration of military justice.*" *United States v. Cruz-Rijos*, supra, at 725, 1 M.J. at 431 (emphasis added). The Court, however, has only taken "remedial action" with respect to those cases in which an accused is in continued post-trial confinement for more than 90 days. The "remedial action" taken by the Court has consisted of the judicial creation of a presumption of deprivation of a substantial right, which, if unrebutted by the government, will result in the reversal of all findings of guilty and a dismissal of all charges. *United States v. Brewer*, supra; and *Dunlap v. Convening Authority*, supra.

It is our opinion that the drastic remedy of a disapproval of valid findings and the dismissal of charges should not be resorted to except in those cases where a deprivation of substantial rights of the defendant is present as a result of post-trial delay, or in flagrant cases involving the deprivation of substantial due process such as that found in *Ward*, supra.

We believe, however, that the military justice system and the Coast Guard cannot condone nor tolerate unexplained, unjustified, and apparently unnecessary post-trial delays of the magnitude presented in *Ward*, supra; *Player*, supra; *Jackson*, supra; and this case.

During argument in this case, appellate government counsel noted that the Chief Counsel of the Coast Guard has recently established by regulation, a requirement that in all cases involving a post-trial delay in excess of 180 days, the reasons, explanations, and justification of the delay must accompany the record of trial when it is forwarded to him. In response to a question as to the remedy the Chief Counsel prescribed for a failure to adequately explain or justify the excessive delay, counsel conceded that no remedy had been prescribed.

The question becomes, then, whether this Court should follow the lead of the Court of Military Appeals and judicially fashion an appropriate "remedy" for those cases involving excessive, unjustified post-trial delay without the accused having been in post-trial confinement in excess of 90 days; or whether this Court should await action by the Court of Military Appeals to address this issue. In our opinion it would be an abdication of our responsibilities to refuse to correct a situation in which members of the Coast Guard are required to wait for excessive periods in a "leave without pay" status or in an "ineligible for promotion status," before the results of their cases become final, particularly when there appears to be no excuse, justification, or necessity for the delay.

It is clear that many employers will not hire an individual for permanent, full-time employment who is still on active duty in the armed forces, particularly in a case where the job applicant is under sentence of a court-martial and awaiting final action thereon. Thus members of the Coast Guard in a "leave without pay" status are not only without any income from the Coast Guard, but also are unable to obtain any meaningful permanent, full-time employment in the private sector. When their "leave without pay" status continues on, and on, and on, the situation is clearly intolerable and it cannot be said that the accused has suffered no prejudice as a result of the excessive delay.

It is also clear that members of the Coast Guard under sentence of a court-martial imposing a punitive discharge who remain on duty are ineligible for promotion; and, in general, are not available for transfer or assignment to any responsible position so long as appellate review is still in process. These individuals, as with their "leave without pay" counterparts, are in "limbo" until the completion of appellate review. For individuals to be required to remain "in limbo" for unduly protracted periods awaiting finality of their courts-martial is clearly not in the interest of the military justice system or the Coast Guard.

We can conceive of very few cases, or circumstances, where convening and supervisory authorities could not, with even a modicum of diligence, review and take their actions on a record of trial within 180 days after the date the accused was sentenced. We would, therefore, prescribe a rule that 90 days after the date of this opinion, a presumption of prejudice would arise in any case in which the action of the supervisory authority on a record of trial is, without adequate explanation or justification, not taken within 180 days of the date the accused was sentenced. This period is *twice* as long as that prescribed by the Court of Military Appeals in *Dunlap*, supra, and *Brewer*, supra, and should not work an unreasonable burden on the Government or convening and supervisory authorities, particularly in view of the Chief Counsel's own directive establishing a "180 day rule."

Unlike *Dunlap*, supra, and *Brewer*, supra, the prejudice arising under this presumption would only extend *to the sentence* in the case, and the failure of the Government to rebut the presumption would result *only* in a disapproval of the sentence. The Government, and society, should not be deprived of an otherwise valid conviction; on the other hand, however, the Government should be penalized, or stimulated, depending upon how one looks at it, through a disapproval of the sentence in those cases where the convening or supervisory authority, without apparent reason, excuse, or justification, simply "sits on a case" because the accused is not, or is no longer, in post-trial confinement.

Judge BRIDGMAN concurs.

Chief Judge ROSENWASSER and Judge MAGUIRE concur in result.

MAGUIRE, Judge, concurring in result:

For several reasons I find it insufficient merely to join in the result of the decision here. The first is that the proposal favored by half the sitting court holds out a renewed offer to litigants which might be misunderstood if some specific objection were not voiced now. The proposal would

lay down a rule for future conduct of reviewing authorities under pain of this Court's disapproval of sentences.

The regulation promulgated by the Chief Counsel and referred to as if of significance to the proposal is irrelevant. Assuming that there is a valid regulation governing the processing of court-martial records, the absence of an apparent sanction cannot be interpreted as an invitation or authorization to this Court to establish sanctions. The Chief Counsel cannot, of course, enlarge the statutory authority of the Court and just as his administrative management purposes in providing deadlines of sorts for certain actions by supervisory authorities may be multiple and are unknown so his means of enforcing his requirements are inscrutable. It is not for this Court to speculate or to pronounce judgment on the administrative considerations of means and ends.

The function of this Court is to perform the duties imposed on it by Article 66 (10 U.S.C. 866). With respect to findings and sentences it is to approve "only" what it "finds correct in law and fact and determines, on the basis of the entire record, should be approved." It has done that in this case, unanimously, and may go no further in prescribing new rules for other cases yet untried or unheard. Insofar as the Court of Military Appeals has such authority its dictates become, of course, "the law" by which this Court judges the record before it; osmosis does not transfer that rule making power to this Court.

If some concept of "activism" (as *per se* desirable) can be thought to justify *ultra vires* action, the lesson in the *"Hurlburt"* case should be a deterrent anyway. *United States v. Hurlburt*, A.C.M. S242256, 51 C.M.R. 599, 1 M.J. 742, applied, in the Air Force, the "Dunlap" rule to supervisory authorities. The decision was reversed by the Court of Military Appeals (citation not available, but see *United States v. Hurlburt*, 51 C.M.R. 789, 1 M.J. 797), which, in the interim, had itself made the rule for supervisory authorities in *United States v. Brewer*, 24 U.S.C.M.A. 47, 51 C.M.R. 141, 1 M.J. 233. Further, such "activism" by a Court of Military Review is antithetical to the codified purpose of uniformity, for which great concern was recently expressed in *McPhail v. United States*, Misc. 75–22, U.S.C.M.A., 1 M.J. 457, Aug. 27, 1976.

Apart from the "argument" here, I note that when the proponents consider such matters as ineligibility for promotion or transfer, and the like, as motivating establishment of a rule for future cases they are encroaching on policy considerations within the province of the administrator. If there are evils to be corrected there are remedies in the powers of the personnel administrators and they are not to be dealt with in well-intentioned but ill-founded quasi-judicial pronouncements. Still apart, I am not sure that I understand the rule proposed or that I would even if it were uttered in this form by the Coast of Military Appeals. It involves a specified period of time. If this is exceeded there must be "adequate" explanation. (No guide is offered.) If the time is not adequately explained, then a presumption of prejudice arises. I take it, however, that this presumption is rebuttable by a showing that no actual prejudice attached. If, after all this, there is found actual prejudice, the sentence will be disapproved. This is not a rule in the true sense at all. It is a formulation for the sake of form of a practice already followed by this Court in certain *ad hoc* determinations that prejudice occurred because of undue delay in review necessitating disapproval of certain types of sentence. Determinations under "the rule" would still have to be made on a case by case basis, as now, on the whole record before the Court under Article 66.

I repeat, however, that the statutory directive to this Court to act on the findings and sentence of this case, on the entire record of this case, does not warrant rulemaking for cases not yet tried or seen or heard or properly before the Court for action.