UNITED STATES

v.

Victor G. CLEVIDENCE, III Seaman
Recruit, U.S. Coast Guard
CGCMS 23510.

Docket No. 826.

U. S. Coast Guard Court of
Military Review.

27 April 1981.

Trial Counsel: LT Carl A. Swedberg, USCG Assistant Trial Counsel: LT Bridges W. Edwards, USCGR for gov't.

Defense Counsel: LCDR Ronald S. Matthew, USCG Appellate Defense Counsel: LT Judith M. Hammond, USCGR for accused.

Appellate Government Counsel: LCDR Robert W. Ferguson, USCG for gov't.

## OPINION

MORGAN, Chief Judge:

Seaman Recruit Victor G. Clevidence, III, U.S. Coast Guard was tried by a special court-martial convened by the Commanding Officer, U.S. Coast Guard Cutter YOCONA (WMEC 168) on 11, 12 and 13 April 1979. He pleaded not guilty to two offenses of failing to go to his appointed place of duty in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886, not guilty to an offense of disrespectful behavior toward his superior officer in violation of Article 89, UCMJ, 10 U.S.C. § 889 and not guilty to three offenses of failure to obey orders in violation of Article 92, UCMJ, 10 U.S.C. § 892. He pleaded guilty to another offense of failure to obey a lawful order in violation of Article 92. The court-martial members found the accused guilty as charged. Evidence of seven prior punishments pursuant to Article 15, UCMJ, for various offenses was introduced and the members sentenced the accused to be confined at hard labor for three months, to forfeit $279.00 per month for three months and to be discharged from the service with a bad conduct discharge. This sentence was approved by the convening authority and by the officer exercising general court-martial jurisdiction.

Appellate defense counsel has asked us to disapprove the sentence to a bad conduct discharge because the accused was denied his right to a speedy review of his case; because the legal officer's review was inadequate; and, because a sentence to bad conduct discharge is inappropriate for Seaman Recruit Clevidence. During our examination of the record, we also noted with

respect to the legal officer's review that it was signed by a law specialist other than the district legal officer who had not been designated in writing for the purpose as required by Section 0510–1 of the Coast Guard Military Justice Manual, CG–488.

Article 65(b), UCMJ, 10 U.S.C. § 865(b), incorporating some of the requirements of Article 61, 10 U.S.C. § 861, provides that the record of a trial by special court-martial in which a sentence including a bad conduct discharge has been approved by the convening authority shall be sent to the officer exercising general court-martial jurisdiction over the command for review. Before acting on the record, the officer exercising general court-martial jurisdiction shall refer the record to his staff judge advocate or legal officer who shall submit his written opinion thereon. See also paragraph 85, Manual for Courts-Martial, 1969 (Rev.). The words "his staff judge advocate or legal officer" have been interpreted to mean the senior judge advocate or legal officer of the command. See *U. S. v. Schuller*, 5 U.S.C.M.A. 101, 17 C.M.R. 101 (1954); *U. S. v. Callahan*, 10 U.S.C.M.A. 156, 27 C.M.R. 230 (1959); *U. S. v. Kema*, 10 U.S.C.M.A. 272, 27 C.M.R. 346 (1959); Section 510–1, Coast Guard Military Justice Manual, *supra*.

Alternatives must be available if the senior judge advocate or legal officer is absent or becomes disqualified. If more than one judge advocate or legal officer is assigned to the command the next senior may act in the absence of the staff judge advocate or legal officer. Additionally, for Coast Guard commands Section 510–1 of the Military Justice Manual, *supra*, provides pertinently:

"If * * * one or more assistant legal officers are attached to * * * a command, and if it appears that the senior is or may become disqualified for any reason from acting as legal officer in any particular case or for a specific period of time, a convening authority may * * * designate, in writing, a junior to act as his legal officer in any particular case or for a specified period of time * * *."

We note that on 5 February 1980, the date of the posttrial advice in this case,

Commander Paul E. Versaw, USCG, was the legal officer for Commander, Thirteenth Coast Guard District, the officer exercising general court-martial jurisdiction over USCGC YOCONA. There were several other law specialists in the district legal office, including Lieutenant Commander Jonathan Collom, USCG, next in seniority to Commander Versaw. The legal officer's review in this case was addressed to Commander, Thirteenth Coast Guard District from Lieutenant Commander Collom by name and is signed by him. Nothing in the record shows in what capacity Lieutenant Commander Collom signed the review and there is no indication that Commander Versaw was absent or disqualified. On request of the Court made during oral argument, Appellate Counsel have submitted an agreed statement that "the status of LCDR Jonathan COLLOM at the time he wrote the legal officer's opinions and advice * * * was that of assistant legal officer * * * not acting in the absence of the district legal officer and not designated by the [Commander, Thirteenth Coast Guard District] to act as his legal officer in this case." The review then was not prepared by the Commander's legal officer or by a junior designated in writing for the purpose.

The review was served on the trial defense counsel more than five days before Commander, Thirteenth Coast Guard District acted on the record and he interposed no objections either to its content or to the qualifications of Lieutenant Commander Collom to review the case. Indeed, we find that the review provides a fair, comprehensive, factually and legally correct analysis of the case, notwithstanding appellate defense counsel's allegation of inadequacy which will be discussed, *infra*.

In *U. S. v. Goode*, 1 M.J. 3 (C.M.A. 1975) the Court of Military Appeals found the staff judge advocate's posttrial review to be prejudicially inadequate and returned the case for further optional action by the Army Court of Military Review. Additionally, the Court took action intended to reduce or eliminate appellate claims of error in the posttrial review of the staff judge advocate as follows:

" * * * [I]t is ordered that on and after May 15, 1975, a copy of the written review required by Article 61 or 65(b), UCMJ, * * * be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any such correction, challenge or comment which counsel may make, shall be made a part of the record of proceedings. (footnote omitted) The failure of counsel for the accused to take advantage of this opportunity within 5 days of said service upon him will normally be deemed a waiver of any error in the review." *U. S. v. Goode,* 1 M.J. at 6.

In *U. S. v. Martinez,* 1 M.J. 280 (C.M.A. 1976) decided by the Court of Military Appeals after *U. S. v. Goode, supra,* and without reference to that case, the Court held that reversal was required because of prejudice to the accused from an improper standard given by the staff judge advocate to the convening authority for use in his review and action on the record. The Court said that the correct inquiry regarding the prejudicial effect of a review error is to determine whether there is a fair risk that it misled the convening authority. To the extent that such fair risk is present, prejudice resulted from the error and the action must be invalidated. See *U. S. v. Hill,* 22 U.S.C.M.A. 419, 27 C.M.R. 397 (1973).

Later in *U. S. v. Barnes,* 3 M.J. 406 (C.M.A. 1977) and in *U. S. v. Morrison,* 3 M.J. 408 (C.M.A. 1977) the Court held that errors, omissions and equivocal statements in staff judge advocate's reviews presenting no fair risk that the convening authority had been misled had been waived by failure of trial defense counsel to object.

The en banc Army Court of Military Review addressed the question of the scope of errors in a staff judge advocate's review which will be considered waived by failure of trial defense counsel to object when given the opportunity in compliance with *U. S. v. Goode, supra. U. S. v. Myhrberg,* 2 M.J.

534 (A.C.M.R. 1976). The court rejected the contention that waiver of review errors under Goode was limited to matters contained in the review which were derived from a source outside the record of trial and which were unrebutted or unexplained by the trial defense counsel after service of the review on him. In a footnote the Court indicated that the application of the "Goode rule" would be "subject to the same limitations, e. g., manifest miscarriage of justice as any other waiver rule." *U. S. v. Myhrberg,* 2 M.J. footnote 10 at 537. Subsequently, a panel of the same court enunciated this rule as "errors not commented upon by defense counsel after examining the review are preserved for appellate review only if the waiver would result in a manifest miscarriage of justice or would otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *U. S. v. Berry,* 2 M.J. 576, 579 (A.C.M.R. 1977) petition for review by USCMA denied 3 M.J. 339. If the *Goode* rule is to be helpful in reducing the continual and often repeated claims of error in staff judge advocates' posttrial reviews, its application cannot be limited to the narrow facts of the case in which it was announced but must be made meaningful by interpretations such as that announced by the Army Court of Military Review.

The review for the officer exercising general court-martial jurisdiction in this case was not prepared by "his" legal officer or by another qualified lawyer designated in writing for the purpose. But that fact must have been known to trial defense counsel and he interposed no objection. There is no indication that Lieutenant Commander Collom was disqualified to review the case and, as indicated above, his review fairly summarized the material evidence on both sides of the essential issues and provided the proper standards by which the supervisory authority could determine anew the guilt or innocence of the accused and make an informed decision as to which parts or amounts of the sentence should be approved. See *U. S. v. Cruse,* 21 U.S.C.M.A. 286, 45 C.M.R. 60 (1972); *U. S. v. Roeder,* 22 U.S.C.M.A. 312, 46 C.M.R. 312 (1973).

As Chief Judge Quinn said in his concurring opinion in *U. S. v. Kema, supra,* at 27 C.M.R. 349, " * * * Article 61 does not prescribe a rigid rule of procedure; rather, it calls for the exercise of good sense and sound judgment." If the record presents difficult issues for resolution the personal attention and advice of the staff judge advocate or legal officer may be required since he is presumably the most mature and experienced lawyer on the staff. On the other hand, if the issues are not complicated they may be adequately addressed by an assistant staff judge advocate or legal officer. The issues presented by the Clevidence record were not complicated and were fully addressed by Lieutenant Commander Collom in his review of the case. Under the circumstances, we have concluded that the review of the case by an assistant legal officer not designated in writing for the purpose rather than by the legal officer did not result in a manifest miscarriage of justice or otherwise seriously affect the fairness, integrity, or public reputation of the proceedings. *U. S. v. Myhrberg* and *U. S. v. Berry,* both *supra; U. S. v. Lassiter,* 7 M.J. 544 (A.F.C.M.R. 1978). The trial defense counsel having failed to object, the error was waived. *U. S. v. Goode, U. S. v. Barnes* and *U. S. v. Morrison,* all *supra.*

The alleged inadequacy of the legal officer's review is that it failed to inform the officer exercising general court-martial jurisdiction that prior to trial the Commandant of the Coast Guard had authorized the Commanding Officer, USCGC YOCONA to administratively discharge the accused provided no disciplinary action was pending. Disciplinary action was pending which resulted in the findings and sentence now under review.

In support of the allegation that the legal officer's review was inadequate, counsel has filed with the Court a copy of a letter dated 6 March 1979 from the Commanding Officer, USCGC YOCONA, to the Commandant recommending that the accused be administratively separated from the Coast Guard with a general discharge by reason or misconduct. In support of his recommendation the Commanding Officer enumerated the myriad offenses for which the accused had been punished pursuant to the provisions of Article 15, UCMJ, on seven separate occasions from 11 October 1977 through 23 February 1979 together with the several offenses which had been referred to a special court-martial some of which are the subject of our present concern. The Commanding Officer also related that the accused had been counseled on numerous occasions by various representatives of the command without noticeable results. The Commanding Officer expressed his conclusion that Seaman Recruit Clevidence's actions were calculated to impel his separation from the Coast Guard. The Commanding Officer stated that the accused's behavior was having a detrimental effect on discipline and was creating an administrative burden on the command. Counsel also filed a copy of a message from the Commandant dated 27 March 1979 authorizing Seaman Recruit Clevidence's separation with a general discharge due to misconduct provided no disciplinary action was pending.

The Court of Military Appeals considered a similar claim of inadequacy of a staff judge advocate's review in *U. S. v. Edwards,* 23 U.S.C.M.A. 202, 48 C.M.R. 954 (1974). There as in this case the potentially favorable material was related to unfavorable material. The Court of Military Appeals said that if the favorable material should have been brought to the attention of the convening authority as counsel insisted, then clearly the staff judge advocate would have been obliged to mention the unfavorable material. The Court concluded that on balance the staff judge advocate's omission of the information operated to the accused's benefit. We reach a similar conclusion in this case. Moreover, the discussion of clemency factors in a legal officer's review is largely discretionary and it is only when the legal officer abuses his discretion by the omission of significant clemency factors that his posttrial advice becomes inadequate so as to require the preparation of a new review and action. *U. S. v. Fields,* 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958); *U. S. v. Martin,* 9 U.S.C.M.A. 84, 25 C.M.R. 346

(1958); *U. S. v. Jemison*, 10 U.S.C.M.A. 472, 28 C.M.R. 38 (1959). Clearly, the legal officer did not abuse his discretion in the case by failing to mention the Commandant's prior conditional authorization for the administrative discharge of Seaman Recruit Clevidence, particularly since that information was before the supervisory authority in a petition for clemency. *U. S. v. Jemison, supra; U. S. v. Cash*, 14 U.S.C.M.A. 96, 33 C.M.R. 308 (1963). Cf. *U. S. v. Rivera*, 20 U.S.C.M.A. 6, 42 C.M.R. 198 (1970); *U. S. v. Boatner*, 20 U.S.C.M.A. 376, 43 C.M.R. 216 (1971). Even had the omission been error, it was waived by failure of the trial defense counsel to object. *U. S. v. Goode* and *U. S. v. Barnes*, both *supra*.

This record presents another deplorable example of official indifference toward the timely posttrial review of Coast Guard courts-martial which has formerly been condemned by the Chief Counsel and by this Court. See 414 Law Bulletin 5 (June 1976); *U. S. v. Player*, 2 M.J. 1115 (C.G.C.M.R. 1975); *U. S. v. Owens*, 2 M.J. 1286 (C.G.C. M.R. 1976). Sentence was announced and the accused was confined 13 April 1979. He completed his three months confinement less good conduct time in 77 days and was released from confinement 29 June 1979. At his request he was immediately sent home in a status of leave without pay awaiting completion of appellate review. The 152 page record of trial was not authenticated by the military judge until 30 October 1979 and the convening authority did not take action approving the sentence until 18 December 1979. The review by a legal officer was dated 5 February 1980 and the Commander, Thirteenth Coast Guard District finally took action approving the sentence 20 February 1980, some 313 days after sentence was adjudged.

Section 506-5(b) of the Coast Guard Military Justice Manual, CG-488, provides that the officer exercising general court-martial jurisdiction shall account for the delay in his action or review when the action or review is not taken within 180 days from the date the sentence was adjudged. In the Government's reply to the defendant's brief submitted by his counsel pursuant to the provisions of Article 38(c) Uniform Code of Military Justice, 10 U.S.C. § 838(c), the trial counsel attempted to explain only the delay in the preparation of the record of trial and justify that delay as follows:

"The record of trial for Seaman Recruit CLEVIDENCE was 152 pages in length. After the original record of trial was submitted for authentication to the Military Judge and returned for corrections, three individuals made separate reviews of the record of trial for possible errors of spelling, punctuation, and sentence composition to ensure its accuracy. Pages 35 through 152 were then retyped. This was done to ensure that an accurate record of trial, one without numerous pen and ink corrections, was available for the review process. The Government's position is the delay of the preparation of the record of trial was not unreasonable considering the length of the verbatim transcript, and that the defendant was not prejudiced by this delay, as his leave without pay status was made by voluntary request."

This version of the Government's accounting was adopted by the legal officer reviewing the case.

■ The trial counsel's statement respecting the 261 days delay from sentencing until authentication of the record of trial neither explains nor excuses the delay. Indeed it would support the conclusion that the personnel engaged in the preparation and authentication of the record were grossly derelict in the performance of their duties or were grossly inept or both. Such circumstances have not been accepted by the Court of Military Appeals as excusing either pretrial or posttrial delay. Instead, the Court has required the Government to demonstrate really extraordinary circumstances contributing to the delay such as operational demands, a combat environment, a convoluted offense or similar circumstances. See *U. S. v. Marshall*, 22 U.S. C.M.A. 431, 47 C.M.R. 409 (1973); *U. S. v. Stevenson*, 22 U.S.C.M.A. 454, 47 C.M.R. 495 (1973); *U. S. v. Larsen*, 23 U.S.C.M.A. 564, 30 C.M.R. 783 (1975). The delay in this case then is both inordinate and unexplained.

In *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974) the Court of Military Appeals adopted the rule that when an accused was continuously under restraint after trial and the convening authority did not promulgate his formal and final action within 90 days of the commencement of such restraint after completion of trial a presumption of a denial of speedy disposition of the case would arise. This presumption placed a heavy burden on the Government to show diligence and in the absence of such a showing the charges would be dismissed. In *U. S. v. Brewer*, 1 M.J. 233 (C.M.A. 1975) the Court expanded the *Dunlap* rule to require that in a special court-martial involving a sentence to a bad conduct discharge, both the convening authority and the officer exercising general court-martial jurisdiction must take action on the record within the 90 day period if the accused was in continuous posttrial confinement. This presumption of denial of speedy disposition was not applied in cases involving less than 90 days continuous posttrial confinement. Instead, in those cases an accused was entitled to relief only if it appeared that he had been prejudiced by inordinate delay in the review of his case. See *U. S. v. Prater*, 20 U.S.C.M.A. 339, 43 C.M.R. 179 (1971); *U. S. v. Davis*, 20 U.S.C.M.A. 541, 43 C.M.R. 381 (1971); *U. S. v. Whitmire*, 21 U.S.C.M.A. 268, 45 C.M.R. 42 (1972); *U. S. v. Wheeler*, 21 U.S.C.M.A. 468, 45 C.M.R. 242 (1972).

■ More recently in *U. S. v. Banks*, 7 M.J. 92 (C.M.A. 1979) the Court abandoned the *Dunlap-Brewer* rule and returned to the former rule that "applications for relief because of delay of final action by the convening authority will be tested for prejudice." 7 M.J. at 94. See also *U. S. v. Green*, 4 M.J. 203 (C.M.A. 1978); *U. S. v. Burns*, 2 M.J. 78 (C.M.A. 1976); *U. S. v. Gray*, 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973). Thus the test of whether Seaman Recruit Clevidence is entitled to have the charges against him dismissed or to other relief is to be determined by whether he has suffered prejudice from the delay of final action by the officer exercising general court-martial jurisdiction.

■ Appellate defense counsel argues that the length of the delay alone is prejudicial to the accused. Counsel has also filed an affidavit executed by the accused in which he made a vague unsubstantiated assertion that his status on appellate leave awaiting disposition of his case had impaired his ability to obtain suitable employment although he did say that he was holding down two jobs when the statement was made in April 1980. This is not a showing of prejudice which would justify dismissal of the charges in the absence of other prejudicial error appearing in the record. *U. S. v. Prater, U. S. v. Davis, U. S. v. Wheeler, U. S. v. Burns*, all *supra; U. S. v. Amundson*, 23 U.S.C.M.A. 308, 49 C.M.R. 598 (1975). Nevertheless, this Court has not hesitated to give sentence relief for inordinate unexplained delay even in the absence of a finding of prejudice to the accused. See *U. S. v. Player*, 2 M.J. 1115 (C.G.C.M.R. 1975); *U. S. v. Owens*, 2 M.J. 1286 (C.G.C.M.R. 1976). Cf. *U. S. v. Ward*, 48 C.M.R. 588 (C.G.C.M.R. 1974).

■ Appellate defense counsel has asked us to disapprove the bad conduct discharge as being inappropriate. This request is not predicated on a claim that the accused's record of conduct in the Coast Guard does not warrant his punitive separation. Rather, counsel argues that since the Commandant had conditionally authorized the administrative separation of the accused with a general discharge prior to his trial in the instant case, the record before us shows that an administrative discharge would be more appropriate. Relying on *U. S. v. Shorter*, 45 C.M.R. 518 (C.G.C.M.R. 1972), counsel argues that a bad conduct discharge should not be approved if the record shows that an administrative discharge would be a more appropriate remedy.

In *U. S. v. Shorter* the Court had before it a record containing extensive psychiatric evidence from various psychiatrists all in essential agreement that the accused suffered from a personality disorder which had been manifested by his total inability to adjust to the rigors of military life. The

psychiatrists were in agreement that the accused should be administratively discharged from the Coast Guard at the earliest possible time. From this and other evidence in the record the Court found that "It tended to show that [the accused] was psychiatrically sick, and that he should have been separated from the service before this; that his violations were at least as much a product of a psychiatric disorder as of bad character or pure orneriness." 45 CMR at 521. On the basis of the entire record the Court found the bad conduct discharge to be an inappropriate punishment for the accused and disapproved that portion of the sentence.

Seaman Recruit Clevidence's case is clearly distinguishable from *U. S. v. Shorter.* His long record of misconduct is not excused by psychiatric illness and there is no indication in this record, as in *Shorter,* that "* * * [A] substantial part of the justification for the [bad conduct discharge] consists of a demonstration that the accused ought to be administratively separated from the service." Instead the record before us amply fulfills the criteria warranting approval of a bad conduct discharge stated by the Court in *U. S. v. Shorter* as follows:

> "If * * * the record demonstrates that [the bad conduct discharge] is fitting as punishment for the particular accused under the circumstances of the offenses for which he stood trial, the court of review should approve it." 45 CMR at 521.

See also paragraph 76a(4), MCM, 1969 (Rev.); *U. S. v. Blakely,* 49 C.M.R. 875 (C.G.C.M.R. 1975); *U. S. v. Riley,* 1 M.J. 639 (C.G.C.M.R. 1975); *U. S. v. Rasmussen,* 4 M.J. 513 (C.G.C.M.R. 1977); *U. S. v. Serna,* 9 M.J. 633 (C.G.C.M.R. 1980).

 On the basis of the record before us, including the inordinate posttrial delay discussed *supra,* the findings of guilty and only so much of the sentence as provides for confinement at hard labor for three months and discharge from the service with a bad conduct discharge are affirmed.

Judges BEAVER and BRIDGMAN concur.

HOLLAND, Judge, dissenting:

I dissent. I cannot accept the majority opinion's premise that the trial defense counsel must have known that the purported Article 65(b), UCMJ, legal review in this case was not prepared by LCDR COLLOM while he was serving as legal officer to the officer exercising general court-martial jurisdiction over the accused. Nor can I accept the statement that nothing in the record shows the capacity in which he signed the review. To the contrary, the document signed by LCDR COLLOM was captioned "legal officer's review and advice" and contained within it a "DLO recommendation" as to the action which should be taken on the sentence awarded, the abbreviation "DLO" being as commonly recognized an abbreviation for District Legal Officer in this Coast Guard context as "SJA" is for the equivalent position of Staff Judge Advocate in the other armed services.

LCDR COLLOM was the second most senior law specialist assigned to the staff of the officer exercising general court-martial jurisdiction in this case, but that staff was headquartered in Seattle, Washington and the trial defense counsel was regularly assigned to a command in Long Beach, California. I cannot conclude, therefore, that the trial defense counsel was in a position to know first-hand that the regularly assigned legal officer was present for duty on the date LCDR COLLOM submitted his self-styled "legal officer review" to the officer exercising general court-martial jurisdiction over the accused. Nor can I otherwise hold that his failure to object to LCDR COLLOM's review on that basis constitutes a waiver under the rule established by *U. S. v. Goode, supra,* since LCDR COLLOM would have been empowered to act as legal officer in the regularly assigned district legal officer's absence without any formal designation and since the transmittal letter which forwarded the document to him for review also characterized it as a "legal officer's review and advice".

In the absence of any indication in the record that the supervisory authority was apprised of the fact that Articles 61 and 65(b), UCMJ, required him to seek the opin-

ion of "his legal officer", moreover, I am unable even to conclude that his acceptance of LCDR COLLOM's opinion on the record of trial, when his regularly assigned legal officer was apparently present for duty, constituted tacit designation of LCDR COLLOM as "his legal officer" for that purpose. I believe the lack of this assurance to be particularly critical, since the legal officer's personal recommendation as to whether the sentence awarded by the court should be approved by the supervisory authority had great potential relevance to the supervisory authority's action. See Article 85(c), MCM.

In light of appellate counsels' stipulation that LCDR COLLOM was not acting in the absence of the regularly assigned legal officer when he prepared and signed the review and advice document upon which the supervisory authority relied in this instance, and in the absence of any indication that the regularly assigned district legal officer had advised the supervisory authority that he concurred with LCDR COLLOM's written review and opinion before the supervisory authority took action on the record, it is apparent that Article 65(b), UCMJ, was not complied with in this instance. *Cf. U. S. v. Schuller, U. S. v. Callahan*, and *U. S. v. Kema*, all *supra.* I would accordingly return the record to the supervisory authority for a proper review and an appropriately reconsidered supervisory authority action.