UNITED STATES, Appellee,

v.

Victor G. CLEVIDENCE, II, Seaman Recruit, U. S. Coast Guard, Appellant.

No. 41252/CG;

CGCMS 23510.

U. S. Court of Military Appeals.

Aug. 30, 1982.

For Appellee: *Lieutenant Christena G. Green*, USCGR (argued); *Lieutenant Commander Robert W. Ferguson*, USCG (on brief).

For Appellant: *Lieutenant Commander Mark A. O'Hara*, USCG (argued).

*Opinion of the Court*

EVERETT, Chief Judge:

This case involves the evil of inordinate, unexplained delay in the post-trial review that was condemned by our Court in *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974).

On April 13, 1979, a special court-martial convicted appellant of two specifications of failing to repair, one specification of disrespect to a superior commissioned officer, and four specifications of failure to obey lawful orders, in violation of Articles 86, 89, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 889, and 892, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor and forfeiture of $279.00 pay per month for 3 months.

The record of trial was not authenticated by the military judge until October 30, 1979 —a delay of 200 days which, according to the brief of appellate government counsel, was "due to numerous discrepancies and mistakes found in the record of trial by the military judge." The convening authority approved the sentence on December 18, 1979; the post-trial review was dated February 5, 1980; and the supervisory authority gave his approval on February 20, 1980— some 313 days after the sentence had been adjudged.

Upon its review of the case, the United States Coast Guard Court of Military Review commented that

[t]his record presents another deplorable example of official indifference toward the timely posttrial review of Coast Guard courts-martial which has formerly been condemned by the Chief Counsel and by this Court. *See* 414 Law Bulletin 5 (June 1976); *U. S. v. Player*, 2 M.J. 1115 (C.G.C.M.R.1975); *U. S. v. Owens*, 2 M.J. 1286 (C.G.C.M.R.1976).

*United States v. Clevidence*, 11 M.J. 661, 666 (C.G.C.M.R.1981). The court added that a statement by the trial counsel concerning

the 261 [sic] days delay from sentencing until authentication of the record ... neither explains nor excuses the delay.[1] Indeed it would support the conclusion that the personnel engaged in the preparation and authentication of the record were grossly derelict in the performance of their duties or were grossly inept or both.

*Id.* at 666. After emphasizing that "delay in this case then is both inordinate and unexplained," the court below observed that in *Dunlap* our Court had

adopted the rule that when an accused was continuously under restraint after trial and the convening authority did not promulgate his formal and final action within 90 days of the commencement of such restraint after completion of trial a presumption of a denial of speedy disposition of the case would arise.

As the court also noted, our Court "abandoned" this rule in *United States v. Banks*, 7 M.J. 92 (C.M.A.1979), "and returned to the former rule that 'applications for relief be-cause of delay of final action by the convening authority will be tested for prejudice.' " 11 M.J. at 667.

Appellant was not confined for 90 days after trial and, at his own request, had been placed on appellate leave upon being released from confinement. Accordingly, the Court of Military Review decided that he had not made an adequate "showing of prejudice which would justify dismissal of charges"; but, in accord with its own precedents,[2] the court relieved Clevidence of the forfeitures by approving only so much of the sentence as provided for confinement at hard labor for 3 months and a bad-conduct discharge.

■ The only issue now is whether additional relief is required. In that connection, we note that appellant's trial occurred before our decision in *United States v. Banks, supra*. Thus, under *United States v. John-son*, 10 M.J. 213 (C.M.A.1981), *Dunlap* would have still been applicable and, if Clevidence had served the entire 90 days' confinement to which he was sentenced—instead of being released after 77 days by reason of the good-conduct time he had earned—he would be entitled to the presumption of prejudice established by *Dunlap*. While the 77 days of confinement will not suffice to create a presumption of prejudice, the circumstance that appellant was in confinement for this period after trial before the record had even been authenticated should be considered in determining whether prejudice existed or whether, in the exercise of our supervisory jurisdiction, we should grant further relief. In this connection, we reiterate the observation that[3]

is the delay of the preparation of the record of trial was not unreasonable considering the length of the verbatim transcript, and that the defendant was not prejudiced by this delay, as his leave without pay status was made by voluntary request.

2. *United States v. Owens*, 2 M.J. 1286 (C.G.C.M.R.1976); *United States v. Player*, 2 M.J. 1115 (C.G.C.M.R.1975). *Cf. United States v. Ward*, 48 C.M.R. 588 (C.G.C.M.R.1974).

3. 10 M.J. 213, 218 (Everett, C. J., concurring in the result).

---

1. The trial counsel's statement was:

The record of trial for Seaman Recruit CLEVIDENCE was 152 pages in length. After the original record of trial was submitted for authentication to the Military Judge and returned for corrections, three individuals made separate reviews of the record of trial for possible errors of spelling, punctuation, and sentence composition to ensure its accuracy. Pages 35 through 152 were then retyped. This was done to ensure that an accurate record of trial, one without numerous pen and ink corrections, was available for the review process. The Government's position

the demise of the *Dunlap* presumption may produce a return to the intolerable delays that persuaded the Court to adopt the presumption in the first place. Indeed, to help prevent such an occurrence, the court should be vigilant in finding prejudice wherever lengthy post-trial delay in review by a convening authority is involved. Moreover, if the problem of post-trial delay occurs frequently in the future, the Court will have to consider resurrecting the *Dunlap* presumption of prejudice.

■ Clevidence claims that he has been hindered in finding adequate employment because potential employers are concerned that he may be recalled to active duty. To some extent, appellant could have avoided this situation by not requesting appellate leave.[4] However, we do not think that he is estopped from arguing that he has been prejudiced by his difficulties in getting steady employment.

We are reluctant to dismiss charges because of errors on the Government's part and we would especially hesitate to do so if the case involved more serious offenses.[5] However, it seems clear that unless we register our emphatic disapproval of such "inordinate and unexplained" delay in a case like this, we may be faced in the near future with a situation that would induce a return to the draconian rule of *Dunlap*.

Because unreasonable post-trial delay seems to be a recurring problem in the Coast Guard, *see, e.g., United States v. Quarles*, 11 M.J. 625 (C.G.C.M.R.1981) (252 days); *United States v. Owens*, 2 M.J. 1286 (C.G.C.M.R.1976) (378 days); *United States v. Player*, 2 M.J. 1115 (C.G.C.M.R.1975) (413 days); *United States v. Ward*, 48 C.M.R. 588 (C.G.C.M.R.1974) (774 days), we inquired extensively during oral argument about the reasons for such delays. Apparently, part of the problem arose from inac-

curacy of court reporting and in the present case about 75 per cent of the record of trial had to be retyped. Even so, since the record totals 152 pages and the delay in authentication was 200 days, the pace was extraordinarily slow.

We were informed by counsel that in some administrative hearings the Coast Guard contracts for reporting services. When, as in this case, a court-martial convenes within the United States, use of contract court-reporting services may be a suitable means to avoid delay. Perhaps, in view of the relatively small number of cases tried by the Coast Guard which require verbatim records, that Service can make arrangements with the other uniformed Services for loan of court reporters. In any event, we are convinced that, with reasonable effort, a solution can be found to the problem. Hopefully, our opinion in this case will help induce that effort.

■ Since it appears that under the circumstances of this case, the delay in post-trial review was prejudicial to Clevidence and since we are sure that, in the exercise of our supervisory authority over military justice, we must halt the erosion in prompt post-trial review of courts-martial, we reverse the decision of the United States Coast Guard of Military Review, set aside the findings and sentence, and dismiss the charges against appellant.

Judge FLETCHER concurs.

COOK, Judge (dissenting):

What I feared would happen when we abandoned the rule of *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), has come to pass. *See United States v. Banks*, 7 M.J. 92 (C.M.A.1979) (Cook, J., concurring in the result). In rejecting a rule certain in its application we have created in its place a rule totally without definition.

---

**4.** Under the law then in effect, involuntary appellate leave was not authorized. *See* The Military Justice Amendments of 1981, Public Law No. 97–81, 97th Cong., 1st Sess., § 2(b)(1) (authorizing involuntary appellate leave). According to appellate defense counsel, Clevidence

claims that he was coerced into requesting appellate leave.

**5.** If the Government considers the charges against appellant to be serious, its inattention to his case is even more puzzling.

The accused was in post-trial confinement for 77 days, a period that would not have given rise to the *Dunlap* presumption of prejudice. Since in *Banks* we returned to the rule set forth in *United States v. Gray*, 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973), my Brothers have examined the record to find some evidence of prejudice to the accused resulting from a 313-day delay in the post-trial processing of the case.[1] My Brothers find this prejudice in the accused's asserted "difficulties in getting steady employment."[2] 14 M.J. 17, 19. The results of this decision cannot help but create total confusion for those who administer military justice.

As we held in *United States v. Gray*, *supra* at 445, 47 C.M.R. at 486:

This Court has ruled that before ordering a dismissal of the charges because of post-trial delay there must be some error in the proceedings which requires that a rehearing be held and that because of the delay appellant would be either *prejudiced in the presentation of his case at a rehearing* or that *no useful purpose* would otherwise be served by continuing the proceedings.

Although the post-trial delay in the case at bar is deplorable and unreasonable, the absence of prejudicial error places this case in the category of those cases mentioned above, not requiring relief for excessive post-trial delay. [Emphasis added.]

Thus, prior to the *Dunlap* presumption of prejudice, delay in post-trial processing would be error only if there was some other error in the trial proceedings necessitating a rehearing, and that because of the delay, the accused would be prejudiced in presenting his case at the rehearing. In other words, the prejudice must appear from the record of trial. Here the majority has fashioned a dramatic departure from this rule. The prejudice found—accused's alleged difficulty in obtaining "good" employment because of the possibility of being returned to active duty—is highly speculative, easy to assert and difficult, if nòt impossible, to disprove. No doubt we will see more of such assertions in future cases.

The second reason delineated by the majority for dismissing the charges is to "halt the erosion in prompt post-trial review of courts-martial."[3] This drastic remedy is justified by "the exercise of our supervisory authority." 14 M.J. at 19. If this is to be remedy for cases like this, I would prefer returning "to the draconian rule of *Dunlap*." *Id.* at 19. Whatever the validity of the criticisms of the "too rigid ... application" of *Dunlap*, it did perform a vital role in reducing post-trial delays.[4] *United*

---

1. The "unexplained and ... unreasonable" delay in *United States v. Gray*, 22 U.S.C.M.A. 443, 445, 47 C.M.R. 484, 486 (1973), was 212 days. In *United States v. Timmons*, 22 U.S.C.M.A. 226, 46 C.M.R. 226 (1973), we found a 180-day delay to be unreasonable but did not grant relief. "Whatever reason might exist to deplore post-trial delay generally, we are loathe to declare that valid trial proceedings are invalid solely because of delays in the criminal process after trial." 22 U.S.C.M.A. at 228, 46 C.M.R. at 228. In *United States v. Prater*, 20 U.S.C.M.A. 339, 43 C.M.R. 179 (1971), a post-trial delay of nine months was not deemed to have prejudiced the accused since we found no other errors in the trial. But we concluded: "Where error has occurred in the conduct of a court-martial proceeding, some combinations of sentences and delays can result in cases requiring relief if a review for errors of law under Article 67, ... is not to become a completely inane exercise. Unexplained appellate delays may demand a dismissal if prejudicial errors have occurred." 20 U.S.C.M.A. at 343, 43 C.M.R. at 183.

2. In an affidavit filed with the Court of Military Review, the accused stated that it has been "impossible to get a good job" but that he has been "holding down two jobs" which are "low paying and take no training."

3. The court below references the "deplorable example of official indifference toward the timely post-trial review of Coast Guard courts-martial." Our review of cases from the other uniformed services indicates the problem does not lie solely with the Coast Guard. *See, i.e.*, The Army Lawyer, DA Pamphlet 27–50–113 at 15 (May 1982).

4. The relaxing of post-trial standards for expeditious processing of cases indicates to me that we must reconsider the wisdom of our abandonment of the *Dunlap* principle of presumed prejudice. It may well be that we should adopt a rule permitting more leniency in overcoming

*States v. Banks, supra* at 94. At least the people in the field would have a time schedule they could understand and apply. Here we merely set a "313-day" (or "200-day") rule; what will happen to the 250-day case? Of course, the rule in *Dunlap* is predicated upon the amount of *confinement* served by the accused; here the majority's rule is based upon time of *processing* the record to authentication.[5] Consequently, the rule would apply even if the accused served no confinement at all and remained on active duty.

the presumption, but at least such a rule would require explanation by the Government of the reasons for such unreasonable delay.

5. "Inordinate [post-trial] delays do not '*ipso facto*' demonstrate prejudice." *United States v. Davis*, 20 U.S.C.M.A. 541, 542, 43 C.M.R. 381, 382 (1971).

I fully concur in the comments of the Coast Guard Court of Military Review condemning the performance of those engaged in the preparation and authentication of the record. However, the remedy fashioned by that court (elimination of forfeitures) is entirely appropriate to the prejudice asserted by the accused. Adopting the remedy propounded by the majority is truly "burning the barn to kill the rats."[6]

I would affirm the decision of the United States Coast Guard Court of Military Review.

6. I wonder if the majority would extend the unreasonable delay accompanied by asserted but unverified prejudice rule to delays in the appellate process either at the Court of Military Review level or this Court. *Cf. United States v. Richmond*, 11 U.S.C.M.A. 142, 28 C.M.R. 366 (1960); *United States v. Tucker*, 9 U.S.C.M.A. 587, 26 C.M.R. 367 (1958).