UNITED STATES

v.

Sammie L. BOLDON, 454 04 6604, Seaman (E-3), U.S. Navy.

NMCM 83 4035.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 14 Oct. 1981.

Decided 9 March 1984.

CDR David C. Larson, JAGC, USN, Appellate Defense Counsel.

LT Philip J. Shebest, JAGC, USNR, Appellate Defense Counsel.

LT Joseph J. Portuondo, JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and MITCHELL and BARR, JJ.

BARR, Judge:

The growth of appeals to this Court predicated on *United States v. Clevidence,* 14 M.J. 17 (CMA 1982), and its progeny, continues unabated, as exemplified by the error assigned in this case:

APPELLANT HAS BEEN DENIED HIS RIGHT TO SPEEDY REVIEW OF HIS COURT–MARTIAL CONVICTION WHERE 628 DAYS ELAPSED BETWEEN THE DATE OF THE COMPLETION OF THE TRIAL AND THE DATE OF THE SUPERVISORY AUTHORITY'S ACTION IN A CASE INVOLVING AN UNAUTHORIZED ABSENCE, A 207 PAGE RECORD OF TRIAL (150 PAGES OF THE RECORD WERE DEVOTED TO ONE JURISDICTIONAL MOTION), NO ADEQUATE EXPLANATION FOR THE DELAY, AND THE APPELLANT HAS SUFFERED POST–TRIAL PREJUDICE BECAUSE OF THE DELAY.

Appellant was convicted by special court-martial, after pleas of guilty, of one specification of unauthorized absence, extending from 27 July 1978 to 25 June 1981, in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. The sen-

tence to a bad conduct discharge, confinement at hard labor for 75 days, forfeitures of $300 pay per month for three months, and reduction to pay grade E–1 was adjudged on 14 October 1981. The subsequent and vagarious journey of this case through the post-trial review process is characterized by administrative bungling, passive attention, and divisible responsibility for the delay now alleged to be prejudicial.

## THE CHRONOLOGY

| Event | Date |
| --- | --- |
| Sentence adjudged | 14 October 1981 |
| Record of trial authenticated | 5 February 1982 |
| Convening authority action | 9 February 1982 |
| Record of trial received by detailed defense counsel | 9 February 1982 (Approx.) |
| Record of trial received by staff judge advocate to supervisory authority | 19 February 1982 |
| Record of trial returned by supervisory authority to convening authority for (1) lack of appellate rights statement, and (2) lack of evidence of receipt by appellant of a copy of the record of trial | 17 March 1982 |
| Detailed defense counsel has telephone communication with appellant and mails Appellate Rights Statement to appellant [1] | Late September/ early October 1982 |
| Detailed defense counsel discharged from active duty | December 1982 |
| Record of trial received by supervisory authority from convening authority – without Appellate Rights Statement or evidence of appellant's receipt for record of trial | 9 February 1983 |
| Staff judge advocate review completed | 22 March 1983 |
| Staff judge advocate review forwarded to detailed defense counsel | 23 March 1983 |
| Staff judge advocate receives both verification that detailed defense counsel had received SJA review (date of receipt either not obtained or, if known, not made a matter of record) and assurances that Goode response will be forwarded [2] | 31 May 1983 |
| Supervisory authority action taken – without Goode response appended or disclaimer of intention to submit such a response | 4 July 1983 |
| Judge Advocate General directs appointment of appellate defense and Government counsel | 29 August 1983 |
| Case assigned to appellate defense counsel | 6 September 1983 |

| | |
| --- | --- |
| Appellate defense counsel requests enlargements of time to file briefs–due to "heavy caseload" | 6 October/ 6 November/ 6 December 1983 |
| Appellate defense counsel files assignment of error claiming denial of speedy review, with unsigned affidavit purportedly of appellant attached as "offer of proof" to show prejudice, with promise that signed affidavit would be filed by separate motion when received | 28 December 1983 |
| Appellate government counsel moves to strike appellant's brief, because not supported by a properly executed affidavit, and to stay proceedings pending resolution of the motion to strike | 25 January 1984 |
| Appellate defense counsel files three (3) motions: (1) to amend pleadings so as to delete reference to the unsigned affidavit attached to the brief; (2) to file the affidavit of appellate defense counsel, executed on 1 February 1984, which recited virtually verbatim the content of appellant's unsigned affidavit; (3) to permit appellate defense counsel to withdraw from the case because he had become, by his affidavit, a witness in the case | 1 February 1984 |
| Court ORDER denying Government's motions to strike and stay proceedings | 2 February 1984 |
| Government's motion to reconsider Court's ORDER of 2 February, to deny appellant's motions filed on 1 February, to strike appellant's brief, and to stay proceedings until appellant submitted an appropriate affidavit | 7 February 1984 |
| Court ORDER denying Government's motions filed on 7 February and appellant's motions filed on 1 February | 8 February 1984 |
| Appellant's motion to stay proceedings pending receipt of appellant's signed affidavit | 13 February 1984 |
| Court ORDER denying appellant's motion of 13 February | 14 February 1984 |
| Government motion for leave to file late pleadings in answer to assignment of error – with attached unsigned affidavit of a military pay claims examiner, NFC, Cleveland | 17 February 1984 |
| Court ORDER denying Government's motion of 17 February | 21 February 1984 |

In summary, we observe the passage of 168 days from date of trial until the staff judge advocate should have been capable of publishing his review,[3] 460 days thereafter

---

1. The record of trial is silent as to what other activity, if any, was conducted during the period 17 March 1982 to 9 February 1983 to effectuate the directive of the supervisory authority of 17 March 1982.

2. *United States v. Goode*, 1 M.J. 3 (CMA 1975).

3. We believe a period from 19 February to 31 March is sufficient to accomplish a staff judge advocate review and obtain compliance with *Goode*.

consumed before the supervisory authority action was taken, and 232 days before the case became ripe for our decision (21 February).

As to *where* the delays occurred, the chronology is a sufficient compass. As to *why,* we look to two sources: (1) the record of trial and its players, and (2) the general atrophy which has descended upon military justice administration since *United States v. Banks,* 7 M.J. 92 (CMA 1979), ushered in the demise of the "speedy review rule" of *Dunlap v. Convening Authority,* 23 U.S.C. M.A. 135, 48 C.M.R. 751 (1974).

### THE DELAYS

Scarce a lawyer's hand has touched this case without leaving enfaced thereon the blemish of neglect or incertitude. The last responsible act was performed by the military judge in authenticating the record of trial.

*Detailed · defense counsel:* Contrary to the requirements set forth in Paragraph 48 *k*(3), *Manual for Courts-Martial, 1969 (Rev.)* (MCM), and 0121a, Manual of the Judge Advocate General (JAGMAN), this officer of the court did not cause to be completed an appropriate appellate rights statement by appellant. When considered in light of the number of years this duty has been identified with a trial defense counsel's post-trial responsibilities, such nonfeasance is patently inexcusable. We also note that this singular act of neglect in essence renders nugatory one of the purposes envisioned by Paragraph 48*k*(3), MCM—conservation of appellate resources by providing for a statutory invocation of waiver of appellate representation if an accused fails to request same within the permitted time.[4]

*Trial counsel:* By his failure to ensure receipt by appellant of a copy of the record of trial, either by personal service or by transmittal, he ignored the statutory duties placed upon him by Paragraph 82*g*(1) MCM. If the requirements of the MCM,

rather than local rules of convenience, were followed, transgressions of this sort would be the uncommon, rather than the norm.

*The staff judge advocate:* A total lack of awareness of the appellate process governing representation by appellate counsel is in evidence. The staff judge advocate should have known that, pursuant to Article 70(e), UCMJ, 10 U.S.C. § 870(e), the Judge Advocate General would direct the assignment of appellate counsel to represent an accused where the record failed to disclose that said accused was ever advised of his rights to such representation. If possessed of such knowledge, the action of the supervisory authority could have been completed at least by 31 March 1982. Lacking such an understanding, the staff judge advocate returned the record of trial to the convening authority to correct a deficiency that, even if it assumed the importance apparently ascribed to it, could have been resolved with equal expedition of time and resources in the office of the staff judge advocate. We will assume that the staff judge advocate prepared the correspondence which directed the convening authority to obtain both a completed appellate rights statement and a receipt for a copy of the record of trial from appellant. In the face of this exercise of directive authority, we languish in vain for any rational explanation why the staff judge advocate did not call upon the convening authority for an accounting within a month or so when compliance was not forthcoming. Though the staff judge advocate conveniently "delegated" the details of obtaining the documentation to the convening authority, he could not delegate his responsibility as the authority in supervision over the processing of the case by a subordinate unit. The total inaction of the staff judge advocate for almost 11 months while supinely awaiting performance of the directed action is without justification. The pathetic irony made evident after 11 months is that the case was acted upon by the supervisory authority and forwarded

---

4. We also note that trial defense counsel made no effort to comply with the decision in *United*

*States v. Palenius,* 2 M.J. 86 (CMA 1977).

for an Article 65(b), UCMJ, 10 U.S.C.A. § 865(b), review *without any appellate rights statement attached.*

*The convening authority:* We take judicial notice that the command of the convening authority is staffed with a qualified military attorney. Beyond permitting the inference that at least one request was made by that attorney, or his immediate office, to the detailed defense counsel to obtain an appellate rights statement, the record of trial evidences a vaporous effort at best to reconcile the record to the requirements of law—an effort consuming 11 months and producing no off-spring, save failure of accomplishment.

*The detailed defense counsel:* After effecting communication with appellant in late September/early October 1982 via telephone and mailing to appellant the appellate rights statement for signature, this officer evidently felt his ethical and statutory duties to his client were at an end. No further effort was expended. The review of the staff judge advocate was mailed to this officer of the court on 23 March 1983. We shall presume that he received that review by 1 April. As of 31 May 1983 he had yet to forward his *Goode* response to the supervisory authority or, as a matter of simple courtesy, advise that authority that he intended to enter no challenges to the review. The promise of 31 May 1983, to forward a response, remained unfulfilled as of 4 July 1983 when the supervisory authority took his action—and remains yet an inchoate promise.

*Appellant:* On affidavit filed by the trial defense counsel, we conclude that appellant was on notice that an appellate rights statement was to be expected by him in the mails and that he did in fact receive the form disclosure of advice. The effort to be expended to obtain appellate representation was the affixing of his signature to the form and mailing it to his counsel. The effort evidently exceeded the interest.

*Staff judge advocate:* The ambience of incertitude which surrounded the actions of the staff judge advocate when contemplating the mechanics and necessity of obtaining an appellate rights statement persisted unabated after his review was mailed—by certified mail—to· the detailed defense counsel, now a civilian. When no acknowledgement of receipt was received within at most three weeks, the prudent act would have been to communicate with the counsel by telephone. The method of evidencing receipt by that counsel—an affidavit by the staff judge advocate's legalman, dated 9 August 1983, which recounted a telephone conversation of 31 May in which the counsel acknowledged receipt of the review—could have been accomplished in mid-April, with the supervisory authority action following shortly thereafter. Instead, the staff judge advocate delayed the case for over a month after receiving the defense counsel's acknowledgement of receipt—over three months after mailing the review—before obtaining the action of the supervisory authority. No *Goode* response or receipt for the review was ever submitted. *Goode* provides for waiver in the absence of response. The staff judge advocate should not have been reluctant to extrapolate waiver based on the failure of the defense counsel to reply.

*Appellate defense counsel:* Counsel for appellant have addressed the issue of denial of speedy review for our consideration. In the process of doing so, three extensions of time, of 30 days each, were requested and granted, without hint that evidence necessary to the assignment was to be forthcoming from appellant. When the brief in support of the assignment of error was filed with the Court, an unsigned affidavit purporting to relate the prejudice suffered by appellant due to the delay *through the supervisory authority level* was appended. In this posture, the briefed issue consisted of a summary assignment of error with citation to law, but with no evidence of prejudice save that to be derived, if any, from the mere duration of delay.[5] When appellate

---

**5.** Government appellate counsel, by their repeated efforts to strike the *brief* of appellant, still fail to recognize the legitimacy of the brief as an entity separate from an attached docu-

defense counsel—quite like the detailed defense counsel at trial, or so it appears—failed to receive the cooperation of appellant in signing and returning the affidavit prepared for his signature by appellate defense counsel, the latter counsel sought withdrawal from the case and permission to file *his* affidavit to attest to virtually the identical facts recited within the unsigned affidavit. For reasons too obvious to require explication, we denied the motion to file the affidavit of appellate defense counsel. So-called tactical machinations continued at the appellate level by both Government and appellant's counsel until 21 February.

We recite these maneuverings at the appellate level to indicate that, in essence, it was not until 21 February, 169 days after receipt of the record for review, that the brief of appellate defense counsel stood in a posture of finality suitable for our review.[6]

## THE LAW OF SPEEDY REVIEW

We mentioned above the apparent atrophy affecting the post-trial review of courts-martial which has set in since *Banks* pronounced the end of the rule of presumptive prejudice enunciated in *Dunlap*. The present case, of course, would not have come within the *Dunlap* rule even had *Banks* never been decided. We mention this event in the law because it appears to mark the beginning of a period of processing malaise which many responsible for post-trial review are willing to permit the administration of military justice to suffer. Perhaps the delicts of office thereby evidenced arise from some belief that the boundaries that separate promptitude from inordinate delay will be but vapidly enforced by appellate tribunals. The simple answer to such an ill-conceived view is found in four citations: *United States v. Clevidence, supra; United States v. Gentry,* 14 M.J. 209 (CMA 1982); *United States v.*

*Sutton,* 15 M.J. 235 (CMA 1983); *United States v. Shely,* 16 M.J. 431 (CMA 1983).

Prior to *Clevidence,* we looked to *United States v. Gray,* 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973) for the standard to measure post-trial delay. That standard was simple, understandable, easily applied, and, most important, rationally appropriate as a remedy in the context of the *legal harm* occasioned by a delay. The *Gray* rule required dismissal *only* where (1) an error affected the proceedings to such a substantial extent that a *rehearing was required,* AND, (2) as a result of the delay the appellant would suffer prejudice in presenting his case at that rehearing or conducting a rehearing would serve "no useful purpose." If the *record of trial* did not disclose grounds for a rehearing, there would be no reversal as an accused could never be prejudiced where the prospect for a rehearing would not arise. Measured by the *Gray* standard, appellant in this case would be entitled to no relief as no error requiring a rehearing is present, or articulated.

The emergence of *Clevidence* suggests two observations: (1) Contrary to the very clear intimation in *Banks* that the Court of Military Appeals was returning to the legal test set forth in *Gray* for subsequent determinations of the validity of a claim of denial of speedy review, that antecedent rule has now, apparently, been repudiated; and, (2) the "standard" or "rule" enunciated in *Gray's* stead is, in appellate practice, an ethereal and skeletal principle which requires continuous appellate litigation to obtain flesh, substance, and weight. That *Clevidence* was, and is, envisioned as the substantive and procedural prosthesis to now fill the void created by the demise of *Dunlap* is clear. That it ill-serves this purpose is, we believe, equally clear.

■ What is the rule of law to be taken from *Clevidence* and the cases which have followed in its wake? If an appellant mere-

ment *yet to be admitted* as evidence on the issue at bar.

**6.** It certainly cannot be contended that the brief filed on 28 December 1983 was complete, as

appellate defense counsel clearly intended that a separate motion to attach an executed affidavit would be forthcoming.

ly asserts—asserts, not proves—some *de minimis* claim of prejudice to him (which of course is often impossible of either verification or rebuttal by the Government), he is entitled to dismissal of the charges upon which he was properly convicted without hint of error *IF* the review by the supervisory authority is not completed within a certain number of days, to be determined on a case-by-case basis, though incapable of quantitative articulation, *IF* the record of trial, in number of pages, is short, or at least not lengthy, and *IF* the offenses involved were not serious, though the rule of dismissal can also be applied to serious offenses. Such a rule raises more issues than it resolves. The obvious questions are how many days equate to inordinate delay and how many pages in a record of trial constitute a not-lengthy record? Is an unsworn statement claiming prejudice sufficient? Or, must the claim be under oath and/or supported by independent evidence? Is an appellate court required to believe an appellant's mere assertion of prejudice, even if under oath, where, as, for example, in this case, that court determines the appellant to be wholly incredible and unworthy of belief? What is a serious offense? Do we look to the Table of Maximum Punishments? Or, as appears to be suggested by *Clevidence,* do we determine seriousness of an offense by reference to the degree of inattention given a case in the review process? Do we look to see when the prejudice commenced? If the asserted prejudice did not commence until after the completion of the review of the supervisory authority, do we now consider delays involved at the appellate level? How long should a case be held pending before this Court in order to permit the marshalling of evidence of prejudice? [7]

The present case is a perfect example of the unsettling effect upon the review of a case resulting from *Clevidence.* A truly deplorable delay was occasioned before the action of the supervisory authority was taken. Appellate defense counsel sought to make issue of this delay but did not receive the cooperation of this "prejudiced" appellant. Faced with a briefed issue without facts to support the position advanced, the frenetic search for evidence of prejudice inexorably led to what can be best described as gamesmanship—an effort to file a patently hearsay document in the guise of an affidavit by appellate defense counsel. Appellate counsel for the Government continued the gamesmanship by moving to strike the entire appellate defense brief— rather than the offending unsigned affidavit which had yet to be accorded legitimacy by even its proponent. Because prejudice— however minor and in whatever form—is *believed* to be the touchstone of *Clevidence,* the entire period from October 1983 to 21 February 1984 was subsumed by the proverbial "battle of affidavits" on this issue at the appellate level.[8] Had the test enunciated in *Gray* been the linchpin of decision, this case would have been resolved by this Court—and appellant's supposedly anxious concerns answered—by the end of October. The search for prejudice due to delay prior to the supervisory authority's action has thus resulted in an additional four months of delay.[9]

---

7. We find an inherent contradiction in the position of an accused who asserts that he wants his case to be final because of prejudice he has suffered awaiting a punitive discharge, yet permits—even joins in—the continued enlargement of his case before this Court and the Court of Military Appeals in order to assert that delay equals prejudice.

8. Military law, on the issue of affidavits, seems to be "imprisoned by history." The procedural devices erected in *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969) and *United States v. Green,* 1 M.J. 453 (CMA 1976) were specifically designed to eliminate the "blizzard of post-trial affidavits." *Clevidence, supra,* now encourages such a blizzard— though it is clearly a one-sided avalanche since the Government is powerless to factually contest the assertions of prejudice claimed by an appellant.

9. After the opinion of the Court in this case was written, appellate defense counsel moved, on 23 February, to file the long-awaited, and now executed, affidavit of appellant. Considering four months to obtain this document to be excessive in the extreme, the motion was denied as untimely filed.

Any system which administers criminal justice should have, as a primordial objective, expeditious processing of every case in order to obtain finality of the conviction or timely correction of error. We believe the time is now ripe to institute a more measured standard to achieve that end. While the alternatives are many, two seem well-suited to the military justice system because of their antecedent existence within our practice. The first alternative consists of application of the *Gray* rule in testing for prejudice, coupled with enforcement of prosecution under Article 98, UCMJ. The *Gray* rule would insure relief in those cases where truly *legal* prejudice is apparent from the record of trial. Active prosecution under Article 98, UCMJ, would result in punishing the real culprits of delay—not the monolithic and faceless "Government." [10]

The second alternative would be a return to a standard similar to the abandoned *Dunlap* rule. As the interest to be served in the administration of justice by the idea of speedy post-trial processing is not distinguishable, as a general concept, on the basis of whether or not confinement is being served, the standard should apply, with gradients of degree, to all cases tried by courts-martial. Such a rule, for example, could establish presumptions of denial of speedy review to exist where the final field review contemplated by law is not completed within 120 days of trial, where confinement is continuous, and 150 days of trial in all other cases. [11] If such an alternative were deemed appropriate, its implementation should be by amendments to either the UCMJ or the MCM—the procedure contemplated by Article 67(g), UCMJ, 10 U.S.C.

§ 867(g)—rather than by Court decree. Changes in the substantive and procedural law for the military system should issue from Congress and the President.

## DECISION

▮ Notwithstanding our dissatisfaction with the decision of *Clevidence*—together with the unnecessary delays incurred in the search for questionable evidence at the appellate level—we must apply its "prejudice in any form" test to the facts of this case. The evidence of prejudice has existed in the embryonic state even to today. Appellant comes to this Court like a "courier without luggage"—claiming prejudice to exist but unable, or unwilling, to demonstrate or sustain such claim through acceptable evidence. We refuse to consider any matter set forth in the unsigned affidavit attached to appellant's initial brief. That brief recited three factors which allegedly have prejudiced appellant: (1) there is no indication that appellant was ever apprised of his appellate rights; (2) there exists no evidence that appellant ever received his copy of the record of trial; and, (3) there is no *Goode* response in the record of trial. Such contentions, as attempts to be equated to prejudice, are spurious at best. The record reflects that appellant was mailed a document containing all his appellate rights. We are willing to indulge in the presumption that he received said document. [12] Furthermore, we note the duty of an appellate defense counsel under Paragraph 48*k*(3), MCM, to communicate directly with his appellant-client on all post-trial matters. We read this to include the duty to advise that client of his appellate rights where there

10. The facts disclosed within the chronology above would, in my opinion, warrant the instituting of such process against the staff judge advocate involved in this case.

11. Proceedings under Article 98, UCMJ, 10 U.S.C. § 898, would certainly not be foreclosed under this second alternative. If anything, proof of the elements of an Article 98, UCMJ, violation would be made much more certain with a *Dunlap*-type standard than under *Clevidence*. Everyone involved in the post-trial processing of cases would be on clear notice of

what constitutes unnecessary delay. Such notice is virtually impossible to extrapolate from the uncertainty which now exists under *Clevidence*.

12. An appellant placed on appellate leave is required to ensure that military authorities at all times have a valid address to which correspondence may be delivered and communication effected. The appellant who disregards this duty should not be heard to complain that official correspondence was sent to an address no longer valid by his actions.

exists in the mind of the attorney some question whether notice of appellate rights has been provided. Finally, this appellant has in fact received all of his appellate rights at this stage of the proceedings. We are unable to perceive any reality of prejudice merely because a certain form was not utilized to achieve the result now obtained. While we are unable to conclude that appellant has received his copy of the record of trial, we do note that neither his trial nor appellate defense counsel has advanced any errors contained within that record for our consideration. Except for misadvice by the staff judge advocate regarding the issue of jurisdiction—a matter not addressed by counsel for appellant—we find no errors. The final factor asserted to have prejudiced appellant is, when considered in light of the record as a whole, entirely vacuous. The evidence is clear that the trial defense counsel received the review of the staff judge advocate and chose not to submit comments or challenge. A waiver could not be more clear. We are thus left with but one valid factor to consider in assessing whether prejudice exists in this case—628 days of needless delay occasioned by negligence and incertitude. We are unwilling to find prejudice to be evidenced by the duration of post-trial processing alone.

## ERROR IN JURISDICTIONAL ADVICE

■ Appellant moved at trial for dismissal of the charge on the ground that the court lacked *in personam* jurisdiction to try him for unauthorized absence. The factual issue specifically addressed alleged recruiter misconduct during the enlistment stage. The credibility of the witnesses was the key to weighing the evidence and resolution of the motion. The military judge, in finding no jurisdictional defect, quite clearly concluded that both the law and the facts were adverse to appellant. We concur in this

estimation of appellant's credibility and veracity. The staff judge advocate, in his discussion of the motion, advised the supervisory authority that the law as effected by the November 1979 amendments to Article 2(c), UCMJ, 10 U.S.C. § 802(c), was controlling.[13] In light of the decision in *United States v. Marsh*, 15 M.J. 252 (CMA 1983), decided 18 April 1983, this was error.[14] We do not find the error to require reversal, as appellant was not prejudiced by the misadvice. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a). Litigation of the jurisdictional issue was not foreclosed, as it was in *Marsh*. To the contrary, the trial of the issue consumed 140 pages of a 207 page record of trial. Further, had the correct advice been given, the result would have been the same.

The findings and sentence, as approved and partially suspended on review below, are affirmed.

Senior Judge ABERNATHY concurs.*

MITCHELL, Judge (concurring):

While I agree with my brethren that *United States v. Clevidence*, 14 M.J. 17 (CMA 1982), created fertile ground in which to propogate a field of sticky time-eating venus flytraps in the form of appellate litigation, *Clevidence* is the law by which this case must be reviewed. I also agree that the state of the record does not glorify the officials and persons involved in the review process of this case. The matters of who is responsible for the delay and what has been done about them are, however, problems for command and the Judge Advocate General to address. I am concerned about the existence of error and resultant legal prejudice, if any. In this respect, egregious delay is painfully obvious, the critical question is whether prejudice to the appellant existed as a result of the delay.

13. Act of November 9, 1979, Pub.L. No. 96–107, § 801, 93 Stat. 810.

14. Since the action of the supervisory authority was not taken until 4 July 1983, almost 4 months after the decision in *Marsh*, we are unable to explain why the staff judge advocate permitted misadvice to be presented to the supervisory authority.

* Captain Kenneth L. ABERNATHY took final action on this case prior to his detachment on 29 February 1984.

In assessing the case for prejudice I would have considered the 17 February 1984 affidavit of the appellant, even though to have done so would have permitted an appellant to control the filing rules of this Court. To not consider the affidavit is merely to postpone resolution of the issue until the Court of Military Appeals takes cognizance of the case. In my judgment the 17 February 1984 affidavit of the appellant shows no general or specific prejudice resulting from the delay. It is replete with self-serving statements regarding appellant's state of mind and perceived remote potential for prejudice. The claim of prejudice is undermined by the appellant's being employed notwithstanding his rather remote relationship with the Navy. Consequently, the 17 February 1984 affidavit of the appellant adds little substance to a naked claim of prejudice. Consequently, I concur with my brethren in the resolution of this case.