UNITED STATES

v.

**Airman Yvonne M. BOURGETTE, FR 557–53–3177, United States Air Force.**

**ACM S27701 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 5 May 1987.

Decided 26 Jan. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Terry M. Petrie.

Before HODGSON, HOLTE, FORAY, MICHALSKI, LEWIS, BLOMMERS, KASTL and MURDOCK, Appellate Military Judges, En Banc.

DECISION UPON FURTHER REVIEW

HODGSON, Chief Judge:

In our initial review of the appellant's trial we affirmed her plea of guilty to a conspiracy to commit aggravated assault. *United States v. Bourgette*, ACMS–27701,

28 April 1988. However, we made clear our concern over the excessive delay between the trial date and the date the record was received by the Military Justice Division in the Office of The Judge Advocate General.[1]

The appellant essentially contended that this delay resulted in the denial of her right to a prompt commencement of appellate review. Since no specific prejudice was identified, and delay in appellate review is not grounds, in and of itself, for relief, her conviction was upheld. *United States v. King*, 18 M.J. 535 (A.F.C.M.R.1984); *United States v. Koziej*, 17 M.J. 1102 (A.F.C.M.R.1984); *United States v. Milan*, 16 M.J. 730 (A.F.C.M.R.1983); *see generally United States v. Matias*, 25 M.J. 356 (C.M.A. 1987) (13 month delay in rendering decision after brief filed with Court of Military Review not a due process violation absent a specific showing of prejudice).

On 10 August 1988, the appellant petitioned the Court of Military Appeals for a grant of review urging that she was denied due process of law under the Sixth Amendment by the inexcusable, excessive, and unexplained delay in the post-trial processing of her case. To support this claim she filed the following affidavit with the Court of Military Appeals:

I, Yvonne Bourgette, swear the following is true and accurate to the best of my ability.

While awaiting final action on my case I was attempting to find other employment. I had gone to three interviews with different employers and the outlook was promising. However, when they asked me for my DD Form 214, I had to tell them I didn't have one yet. They informed me that they couldn't risk hiring me only to have the Air Force recall me later. In short, when my discharge from the Air Force was final, I could re-apply with them for employment.

During this time, I was three months pregnant and desperately in need of medical attention. I went to the nearest military installation but was informed I was no longer entitled to medical benefits. I then went to the welfare office in Marysville, California and applied for medical benefits under the Medi-Cal program, Aid for Dependent Children (AFDC) and the welfare program. In each case, my request was turned down. They told me I was being turned down due to my status in the Air Force. They said it was the responsibility of the Air Force to provide the medical attention I needed and there was nothing they could do for me until the Air Force reached a decision. I finally found a civilian doctor, Dr Joseph Coulter, who was willing to help me. He told me that the stress I was under was not only hurting me, but was unhealthy for my unborn child.

On 30 September 1988, the Court of Military Appeals remanded to us the appellant's record for consideration of the matters alleged in her affidavit. *United States v. Bourgette*, 27 M.J. 401 (C.M.A. 1988).

In response to this remand we specified, on 17 October, the following issues:

WAS THE APPELLANT PREJUDICED WHEN SHE WAS INCORRECTLY INFORMED THAT SHE WAS NOT ENTITLED TO MILITARY MEDICAL BENEFITS WHILE ON APPELLATE LEAVE?

ASSUMING THE EXISTENCE OF PREJUDICE, WHAT WAS ITS DURATION?

I

Before addressing the specified issues we think some discussion of the appellant's claim that the excessive post-trial delay denied her employment opportunities is necessary.

In *United States v. Sutton*, 15 M.J. 235 (C.M.A.1983) and *United States v. Clevidence*, 14 M.J. 17 (C.M.A.1982), the Court of Military Appeals set aside convictions where there were "excessive and de-

---

1. The convening authority took 143 days to review and forward a 60 page transcript, and thereafter it apparently took 52 days in mail channels for the record to be sent from Pope AFB, North Carolina to Washington D.C.

**906**

plorable" delays by the supervisory authority in acting on the case.[2] The court concluded that the appellant's unspecified difficulty in obtaining civilian employment was sufficient prejudice to warrant dismissing the charges. However, this holding was not without disagreement. In his *Clevidence* dissent Judge Cook prophesied:

> The prejudice found—appellant's alleged difficulty in obtaining "good" employment because of the possibility of being returned to active duty—is highly speculative, easy to assert and difficult, if not impossible, to disprove. No doubt we will see more of such assertions in future cases.

Here the appellant makes a generalized assertion of difficulty in obtaining employment. In *United States v. King*, a panel of this court held that such a non-specific claim of prejudice mandated dismissal of the charges. The panel further stated that the inability of the government to rebut this generalized assertion of prejudice would not rescue a speedy review violation. In her dissent Judge Raichle suggested that a limited hearing might be appropriate so that the parties could make a record as to the possible prejudice occasioned by the post-trial delay. In her view this would eliminate the present "battle of affidavits" with the appellant making a "bald assertion of prejudice which the government finds impossible to rebut." Judge Raichle's approach is, of course, no help where the claimed prejudice is so general in nature that a limited hearing would be of no practical use. How can the government respond to a claim that the post-trial delay resulted in a lack of employment opportunity when the business or individual who refused to employ the appellant is unknown? An accused cannot be compelled to testify at an evidentiary hearing, so if that individual declines to identify who refused them employment, the government has no starting point in rebuttal.

We think the position taken by this court in *King* should be reexamined. It is not unfair or illogical to require an appellant who claims prejudice in obtaining post-trial employment because of the delay in acting on the record to identify the organization or person who refused employment and the time frame in which it occurred. The failure of an appellant to provide such information would be considered strong evidence that the appellant was not prejudiced in obtaining post-trial employment. The appellant's affidavit contains a generalized claim of prejudice in finding a job with no reference as to what businesses or individuals refused to hire her. Under these circumstances we conclude the appellant was not prejudiced in the job market by the post-trial delay in reviewing her record. We hold that in order for us to consider evidence of employment prejudice, an appellant must identify the organization or individual who denied employment and the time frame in which it occurred. That part of *United States v. King* which conflicts with this holding is overruled.

**II**

Turning now to the specified issues concerning the appellant's claim that she was denied military medical benefits when "[she] was three months pregnant and desperately in need of medical attention." Here also her affidavit is vague as to what military installation denied her prenatal treatment and when this occurred. She further averred that the State of California also refused her medical treatment because of "[her] status in the Air Force." Based on documents filed with this court by the government[3], the appellant was first seen by Doctor Joseph Coulter, a civilian physician, on 2 October 1987. It follows that the appellant was told she was not eligible for military medical treatment prior to this date.

An individual on excess leave awaiting post-trial processing of a court-martial is still on active duty and is therefore entitled to *full* medical benefits. Article 76a, UCMJ, 10 U.S.C. § 876a, *see* Air Force Regulation 111–1, *Military Justice Guide*, Chapter 15, figure 15–1 (para. 4) (1 August

---

**2.** In *Sutton* the delay was 321 days and in *Clevidence* it was 313 days.

**3.** The government's MOTION TO SUBMIT DOCUMENTS is GRANTED.

1984). The appellant was advised of this on 31 July 1987 and given a copy of the letter containing this information. The government also submitted affidavits from the California State Department of Health Services averring that the military status of an applicant for Medi–Cal benefits and Aid to Families with Dependent Children (AFDC) is not, in and of itself, a factor in determining the applicant's eligibility for benefits under either program.

The appellant's affidavit leaves the impression that she was denied military medical treatment while she was on excess leave and it was only through the humanitarianism of a civilian physician that she and her unborn child received the medical attention they desperately needed. The documentation before the court paints a different picture. The appellant was last seen by Doctor Coulter on 4 November 1987, and on 25 November she was in the prenatal care program at the Beale AFB hospital. At the same hospital, on 2 May 1988, she delivered, without complications, a healthy male infant.

Appellate defense counsel argue that the lethargic post-trial processing of the appellant's case resulted in her and her unborn child being denied critical medical care during a two month period. They contend this is sufficient prejudice to dismiss the charges. *See United States v. Clevidence* and *United States v. Sutton.*

There is no doubt that the 143 day delay in the processing of the appellant's trial was not satisfactorily explained. It further appears that during September and October 1987, she was not provided the military medical benefits to which she was entitled. Accordingly, the appellant was prejudiced to some degree, but neither her health nor that of her child was affected. To dismiss the charges under these circumstances is the legal equivilant of "burning the barn to kill the rats." *United States v. Clevidence,* 14 M.J. at 21, (Judge Cook dissenting); *see also United States v. Sowers,* 24 M.J. 429 (C.M.A.1987) (APPEALS—SUMMARY DISPOSITIONS) (Judge Cox concurring in the result).

The prejudice the appellant incurred in the post-trial processing of her case can be cured without invalidating the results of an error-free trial. We find appropriate only so much of the sentence as provides for a reduction to airman basic. *United States v. Miramontes,* 22 M.J. 882 (C.G.C.M.R. 1986).

The findings of guilty are again

AFFIRMED.

Senior Judge FORAY; Judges, HOLTE, MICHALSKI and MURDOCK concur.

Senior Judge LEWIS (concurring):

I concur in the result reached by Chief Judge Hodgson.

Judge BLOMMERS
(concurring/dissenting in part):

I agree with almost everything in Chief Judge Hodgson's opinion for the majority except its ultimate conclusion that Airman Bourgette "was prejudiced to some degree" as the result of the post-trial delay in the processing of her case. With all due respect, in my judgment there is no showing of prejudice based upon the record and documentation submitted except the appellant's unsubstantiated assertions that she could not obtain post-trial employment and was denied military medical benefits for a two-month period extending between the first and second trimesters of her pregnancy. In fact, the legal brief and documentation submitted by the Government completely refutes that assertion, in my view. Moreover, Congress has established the standard by which court-martial proceedings are to be reviewed: "A finding or *sentence* of court-martial may not be held incorrect on the grounds of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ, 10 U.S.C. § 859(a) (emphasis added). Even accepting the appellant's assertion with regard to medical benefits, where is the *material prejudice* to her *substantial rights?* There simply is none.

The analysis of this matter in the majority opinion does, in my view, go a long way

toward making a case for "no prejudice." But I would like to embellish on a couple of points made therein. The 31 July 1987 letter placing the appellant on required excess leave, which also advised her that she would continue to be entitled to medical care,[4] was signed by the base staff judge advocate. Her written receipt for a copy of that letter also appears in the allied papers. Additionally, the staff judge advocate orally briefed her regarding her entitlements while on required excess leave. Armed with this letter, the fact that she would merely accept without question, according to her, the statement of some unidentified person at an unidentified military installation nearest her home in my opinion is incredible.[5] Secondly, the appellant's medical records as submitted to us by appellate government counsel, including those kept by Doctor Coulter, reveal no indication that she was physically or mentally suffering from "stress" at the time or that she had any medical condition that was unhealthy for her or her unborn child. I do not believe prejudice can be found based upon the information that has been presented to us.

In fact, appellate government counsel note in their brief that, as to medical care, the post-trial delay might be viewed as working to the appellant's benefit. With the exception of the three visits she made to Doctor Coulter, her entire prenatal, delivery and post-partum care, have been provided at Government expense. To this date, both she and her child are eligible for military furnished medical care. Had appellate review been completed by September 1987 or shortly thereafter, as the defense contends would have been the case absent the delay in question, neither she nor her child would have been entitled to this benefit. There is a certain appeal to this reasoning.

There is one other difficulty with the majority opinion, as I read it—an internal inconsistency. In Part I, which addresses the appellant's claim that she could not obtain post-trial employment, the Court analyzes the complaint and concludes that a generalized claim of prejudice will not, standing alone, result in a finding of prejudice, at least under the circumstances present in this case. Why then, is the same rationale not applied in Part II? The appellant's claim of denial of military medical care is no less general. We don't know who told her she was no longer entitled to care, what office she visited or even what installation (although we might presume it was Beale Air Force Base since it is the closest military installation to her leave address). We don't know who she spoke to at the California health services office she says she visited in Marysville, but we know that what she says she was told is just about as incorrect as what she says she was told about her entitlement to military medical care. If a failure to identify prospective employers is considered strong evidence that an accused was not prejudiced in obtaining post-trial employment, then failure to identify the individual or agency contacted should constitute strong evidence that an accused was not prejudiced in obtaining a military entitlement. I find nothing in the appellant's complaint of not being provided military medical benefits for about a two-month period of time that should cause the scales to tip the other direction. If, as the appellant states, she was desperately in need of medical attention and was distressed over her inability to obtain medical aid from either the State or military authorities, then in order to support that claim should not a minimum requirement be a statement from Doctor Coulter (a known individual) that that is why she went to see him? That seems reasonable to me. Do we have such a

---

4. *See* Article 76a, UCMJ, 10 U.S.C. § 876a; Air Force Regulation 111–1, *Military Justice Guide,* Chapter 15 and Figure 15–1 (1 August 1984). This regulation has recently been revised, and the required and voluntary excess leave program is now covered in AFR 111–1, para. 15–14 and fig. 15–3 (30 September 1988).

5. I take judicial notice of the fact that Yuba City, California, which the appellant listed as her excess leave address, is located adjacent to Beale Air Force Base. I am sure the base legal office was only a local telephone away. One call to that office would have straightened this matter out on the spot.

statement? No. I would affirm the findings and sentence as approved by the convening authority.

All this is not to say that post-trial delays, such as the one in this case, should be countenanced. They should not. Yet, I note no trend toward laxness in the post-trial processing of court-martial cases, either Air Force wide or within the command in which this case was tried. Every once in a while a system developed and run by human beings will break down, or at least hiccup. However, without a clear showing of prejudice, I would not be inclined to fashion a remedy as the majority has in this case—a substantial reduction in the sentence following conviction of a very serious offense. I would rather see us first adopt the procedure suggested by Judge Raichle in her dissent in *United States v. King*, 18 M.J. 535, 538 (A.F.C.M.R.1984), a limited hearing to give both parties the opportunity to more fully develop general allegations of prejudice due to post-trial delay. R.C.M. 1102.

Senior Judge KASTL (dissenting):

Our Court today embraces the dissenting views of Judge Cook in *United States v. Clevidence*, 14 M.J. 17 (C.M.A.1982). Until that case is overruled by the Court of Military Appeals we are bound by the majority view—whether we like the opinion or not. Factually, Seamen Recruit Clevidence made "a vague unsubstantiated assertion that his status on appellate leave awaiting disposition of his case had impaired his ability to obtain suitable employment...." *See United States v. Clevidence*, 11 M.J. 661, 667 (C.G.C.M.R.1981). *See also United States v. Milan*, 16 M.J. 730, 733 n. 3 (A.F.C.M.R.1983). That assertion—coupled with "the erosion in prompt post-trial review of courts-martial"—resulted in reversal. *See United States v. Clevidence*, 14 M.J. 17, 19, (C.M.A.1982). *See also United States v. Gentry*, 14 M.J. 209 (Sum.Dis. 1982) (Naval Officer used marijuana; rejected two civilian job offers; charges dismissed) and *United States v. Shely*, 16 M.J. 431 (C.M.A.1983) (rejecting the Government contention that claims of prejudice of this type are difficult if not impossible to rebut).