UNITED STATES

v.

**Kevin C. DUNBAR, 536 66 5108, Electrician's Mate Third Class (E–4), U.S. Navy.**

**NMCM 88 3025.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 18 Oct. 1985.

Decided 26 May 1989.

Lt. Nicholas Fitzgerald, JAGC, USNR, Appellate Defense Counsel.

Lt. John J. Mulrooney, II, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, ALBERTSON and JONES, JJ.

ALBERTSON, Judge:

On 18 October 1985 appellant was tried and convicted at a special court-martial composed of military judge alone of a two and one-half month unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. He was sentenced to reduction to pay grade E-1 and a bad-conduct discharge. The convening authority took his action approving the sentence adjudged in appellant's case on 11 November 1985.

Appellant assigns the following error:

APPELLANT WAS DENIED A SPEEDY REVIEW OF HIS COURT-MARTIAL CONVICTION WHERE OVER THREE YEARS ELAPSED BETWEEN THE DATE OF TRIAL AND THE DATE THE RECORD OF TRIAL WAS DOCKETED WITH THE NAVY-MARINE CORPS COURT OF MILITARY REVIEW.

In support of his assignment of error and pursuant to Rule 23, Courts of Military Review Rules of Practice and Procedure, appellant moved [1] to attach appellant's affidavit [2] explaining the specific prejudice that

---

1. The Government opposed the defense motion to attach appellant's affidavit, claiming that it failed to demonstrate any actual prejudice to appellant resulting from the delay in appellate processing, as differentiated from the consequences generally associated with separation from the service with a bad-conduct discharge. Notwithstanding the Government's objection to the relevance of the document, this Court granted the motion to attach the affidavit on 20 March 1989.

2. 

AFFIDAVIT

I, Kevin C. Dunbar, being first duly sworn, hereby make the following affidavit:

1. I was tried by special court-martial on 18 October 1985, and received a bad-conduct discharge as part of the adjudged sentence.

2. After serving my adjudged sentence, I was sent home on appellate leave.

3. I suffered the following prejudice as a result of my unexecuted discharge:

a. I was unable to obtain Unemployment Insurance benefits because I could not produce

he has suffered as the alleged result of the government's failure to review his case in a timely manner.

A chronology was provided by appellate defense counsel in his brief filed before this Court, which we adopt:

| EVENT | DATE | DAYS ELAPSED |
|---|---|---|
| Trial/sentence adjudged | 18 October 1985 | 0 |
| Original record of trial authenticated by military judge | 28 October 1985 | 10 |
| Convening authority acts | 11 November 1985 | 24 |
| Staff Judge Advocate's Recommendation prepared | 20 November 1985 | 33 |
| Service of Staff Judge Advocate's Recommendation on Defense Counsel | 20 November 1985 | 33 |
| Message traffic between USS CONQUEST, USS GALLANT and PERSUPP DET SEATTLE indicates original record of trial has been lost | 11 April to 15 May 1988 | 907–941 |
| Judge Advocate General writes to convening authority requesting record of trial be located or reconstructed | 14 June 1988 | 971 |
| Military judge authenticates reconstructed record of trial | 7 July 1988 | 994 |
| Two records of trial received at NAMARA | 28 July 1988 | 1008 |
| Record of trial docketed at NMCMR | 18 November 1988 | 1121 |

Appellant, in his assignment of error, identifies his issue as revolving around the inordinate and unexplained delay in the review of his case that commenced on the date his sentence was adjudged. We, on the other hand, find that the convening authority acted quite reasonably when he took his action within 24 days of the adjournment of the appellant's trial. We do find, however, that appellant's case has

a DD 214 proving my discharge from the United States Navy.

  b. I had one year of college prior to coming on active duty. After my discharge, I wished to continue my college education but was unable to do so because I could not get a scholarship. I was not able to get a scholarship because I did not have my discharge papers (DD 214). I was not eligible for the only two available scholarships because my application would not be considered without my DD 214.

  c. My employment possibilities were limited because of my inability to produce my discharge papers. Firstly, I was denied employment at a Safeway grocery because I was unable to produce my DD 214. Then, approximately eight months ago, I was denied employment with the State of Washington (Warehouse Worker II) because of my inability to produce my discharge papers.

  4. In each instance in which my inability to produce my discharge papers proved prejudicial, I attempted to explain why I didn't have these papers, but my explanation was not accepted.

  5. I have been and remain frustrated by the lack of finality of my military status.

/s/ Kevin C. Dunbar
Kevin C. Dunbar

Subscribed and sworn to before me this 23rd day of December 1988.

/s/ [Jean C. Dugas]
Notary Public

My commission expires: Oct 17, 1989

languished for 1097 days in post-trial appellate (the time between the convening authority's action and docketing of the case by the Court of Military Review) limbo without explanation.

■■■ The issue we will resolve therefore is whether that 1097 days of delay between the convening authority's action and the docketing of appellant's case by this Court denied appellant speedy review such that the Charge and Specification should be dismissed. In the absence of "prejudicial error occurring during the court-martial proceedings, the accused is not entitled to relief by the inordinate delay in forwarding the record to this Court." *United States v. Halcomb*, 25 M.J. 750, 752 (NMCMR 1987), *pet. denied*, 26 M.J. 48 (C.M.A.1988); *United States v. Green*, 4 M.J. 203 (C.M.A.1978); *United States v. Timmons*, 22 U.S.C.M.A. 226, 46 C.M.R. 226 (1973). Even if prejudice as a result of inordinate delay occurred at the appellate level, dismissal of the charges is appropriate *only* when some error in the trial proceedings requires corrective action and the appellant would be prejudiced in the presentation of his case at a rehearing or when no useful purpose would otherwise be served by continuing the proceedings. *Green*, 4 M.J. at 204; *United States v. Gray*, 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973). Upon taking his action on appellant's case, the convening authority, by approving the sentence adjudged, found no prejudice occurring during the appellant's court-martial proceeding that required corrective action. Furthermore, appellant does not assert on appeal any error that occurred during his court-martial proceeding that would require a rehearing such that the inordinate delay in the review of his case would cause him to be prejudiced in the presentation of his case should this Court order a rehearing, nor has he shown that no useful purpose would otherwise be served were the proceedings continued. *United States v. Johnson*, 3 M.J. 143, 151 (C.M.A.1977). We have reviewed the record of trial in its entirety and the assignment of error, and finding no prejudice, conclude that the findings and sentence as approved on review below are correct in

law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. We will discuss the reasons for our concluding that the appellant's assignment of error is without merit.

I

Appellant does assert that error occurred in the court-martial proceedings because the convening authority's action, taken on 11 November 1985, was improper because it was taken without the benefit of a staff judge advocate's recommendation as required by Rule for Courts–Martial (R.C.M.) 1107(b)(3)(A)(ii), Manual for Courts–Martial (MCM), United States, 1984, since the staff judge advocate's recommendation dated 20 November 1985 was made 9 days after the convening authority's action. Despite the fact that the convening authority states in his action that he "considered ... the Judge Advocate's review and comments of the defense counsel dated 18 October 1985," the Government concedes that it is unable to find any documentation that could be considered comments submitted by the trial defense counsel on 18 October 1985 and that "[t]he reference in the Convening Authority's Action to comments submitted by trial defense counsel is incorrect...." Government's Response to Court Order. As noted by the Government, the trial defense counsel was served with a copy of the recommendation on the same day the staff judge advocate's recommendation was proposed. Trial defense counsel indicated: "I do not desire to make any corrections or comments." Contrary to the Government's response, appellant does claim that he was prejudiced by this error because the convening authority was deprived of favorable information about appellant, *i.e.*, "that appellant had performance evaluation marks averaging 3.7, that he had no previous convictions, and that he had served 24 days of restriction prior to his court-martial." Appellant's brief at 5. Appellant contends that since this error occurred during the court-martial proceeding, corrective action is required, and the

proper corrective action is dismissal of the Charge and Specification.

■ We agree with appellant that the convening authority's action is part of the court-martial proceedings. *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974). We also agree with appellant that the convening authority is required to have the recommendation of his staff judge advocate or a legal officer before he takes his convening authority's action. Article 60(d), UCMJ, 10 U.S.C. § 860(d); R.C.M. 1107(b)(3)(A)(ii), MCM, 1984. We do not agree, however, that corrective action is necessarily required nor that, even if corrective action must be taken, the only remedy is dismissal of the Charge.

■ Addressing the issue of remedy first, even if corrective action must be taken, that action would not be dismissal in appellant's case because the dismissal remedy is only applicable where a rehearing is required and the accused would be prejudiced in the presentation of his case at that rehearing or no useful purpose would otherwise be served by continuing the proceedings. *United States v. Johnson*, 3 M.J. 143, 151 (C.M.A.1977). No rehearing is required in appellant's case. The only remedy in appellant's particular case would be for this Court to set aside the convening authority's action of 18 November 1985 and return the record for a new convening authority's action.

■ Whether such corrective action must be taken is the issue we now address. The convening authority erred when he took his convening authority's action without having the advice of a staff judge advocate or legal officer, but that renders his convening authority's action erroneous, not null and void. *United States v. Murphy*, 26 M.J. 658 (NMCMR 1988). *Cf. United States v. Murray*, 25 M.J. 445 (C.M. A.1988). If the convening authority's error related to a procedural rather than a substantive matter *and* did not materially prejudice the rights of the appellant, then the error is harmless. *Murphy*, at 659.

Trial defense counsel was served with a copy of the staff judge advocate's recommendation, albeit after the convening authority took his action. He therefore knew that the staff judge advocate recommended that the convening authority approve the sentence adjudged. As evidenced by the proof of service and the return endorsement, trial defense counsel decided he had no comments to make and cited no erroneous, inadequate or misleading information or any other matter.

■ Trial defense counsel's post-trial responsibilities as explained by the Court of Military Appeals in *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977), include the trial defense counsel maintaining "the client-attorney relationship with his client subsequent to the finding of guilty ... until substitute trial defense counsel or appellate counsel have been properly designated and have commenced the performance of their duties...." *Id.*, at 93. We judicially note that appellate defense counsel are only assigned to an accused's case after the case has been docketed before this Court. We therefore presume that trial defense counsel, pursuant to his post-trial responsibilities, knew what action the convening authority had taken in his client's case because either he or his client had to be served with a copy of that action pursuant to R.C.M. 1107(h). (The undated court-martial order indicates a copy of the court-martial order was sent to both the appellant and his trial defense counsel.) Thus, trial defense counsel was on notice that he would soon be relieved of his post-trial responsibilities since appellant had requested assignment of appellate defense counsel to represent him before this Court. Query, where was the trial defense counsel for 1097 days? We find this question particularly significant in light of appellant's assertion that the convening authority would have taken a more favorable action in his case had he been aware of the additional information contained in the staff judge advocate's belated R.C.M. 1106 recommendation. Trial defense counsel's silence indicates to us that, while error was committed by the convening authority, he considered the error harmless. Otherwise,

in the exercise of his post-trial responsibilities, he would have been trying to ensure that the best interests of his client were served by having the error corrected as expeditiously as possible, *e.g.,* notifying appellate defense counsel of the error so that he could address it during the appellate process, or seeking clemency pursuant to Article 73, UCMJ, 10 U.S.C. § 873, based on the favorable information. In the particular circumstances of this case, we find the error substantive, but not prejudicial and therefore harmless. Even were we to find that the error was not harmless, we would, in this unique set of circumstances, pursuant to our Article 66(c), UCMJ, 10 U.S.C. § 866(c), fact-finding responsibilities, and in the interest of judicial economy, *Murphy,* at 659, find the facts presented by appellant as favorable and then determine whether the convening authority would have acted more favorably to the appellant in light of this information. *Cf. United States v. Sales,* 22 M.J. 305 (C.M.A. 1986); *United States v. Hill,* 27 M.J. 293 (C.M.A.1988). We, in fact, do find that his 3.7 average evaluation marks, lack of prior convictions, and 24 days of pretrial restriction all constitute favorable information; but, we are also reasonably certain that that favorable information of which the convening authority may not have been aware, would not have altered in any way his approving the sentence of a bad-conduct discharge and reduction to pay grade E–1 adjudged in appellant's case. We therefore find no requirement to remand for a new convening authority's action. *See United States v. Allen,* 28 M.J. 610 (NMCMR 1989). Accordingly, after our consideration of the favorable information provided by the staff judge advocate, we have examined the sentence adjudged and we find that the sentence approved on review below is appropriate.

## II

Appellant relies on *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982) as his primary authority for asking this Court to dismiss the Charge and Specification due to the denial of speedy review of his case. *Clevidence,* however, deals solely with the inordinate delay that occurred between the time the sentence was adjudged and the time the convening authority took his action in the case. Appellant would have us use *Clevidence* for the proposition that the specific prejudice he asserts is the same as that in *Clevidence* and therefore, because the impact of the prejudice to him is the same, the fact that the delay causing the prejudice occurred at the appellate level rather than at the convening authority's level is immaterial. In fact, his subordinate premise is that there is "no logical basis in the distinction made in the law between inordinate delay before and after the convening authority's action." We reiterate, however, that the relevant delay is that occurring between the date of the convening authority's action and the date appellant's case was docketed before this Court.

In comparing the factual allegations giving rise to the asserted specific prejudice in appellant's case with those in *Clevidence,* we agree with appellant that they are almost identical with those facts underlying the specific prejudice asserted in *Clevidence.* But we also conclude that the delay period in appellant's case is at a similar level of review as that challenged by the speedy review issue in *Green.*

*Clevidence* was reversed due to lack of speedy review because appellant, by affidavit, claimed he had been specifically prejudiced because he could not find adequate employment because potential employers were concerned he would be recalled to active duty. The Coast Guard Court of Military Review rejected the claim of specific prejudice because the affidavit filed by Clevidence "made a vague unsubstantiated assertion...." The Court rejected the appellant's claim that such an assertion showed prejudice justifying dismissal of the charges in the absence of other prejudicial error appearing in the record. *U.S. v. Clevidence,* 11 M.J. 661, 667 (CGCMR 1981). The Court of Military Appeals reversed the Coast Guard Court of Military Review, set aside the findings and sentence, and dismissed the charges against Clevidence because it determined that the

affidavit did provide a sufficient showing of prejudice and the case did not involve serious offenses.[3]

Previously, in *Green,* the Court of Military Appeals upheld a conviction despite unreasonable and unexplained delay between the filing of the petition for review and its forwarding and docketing with the Court of Military Appeals. *Green* was followed five years later by *United States v. Sutton,* 15 M.J. 235 (C.M.A.1983). *Sutton* was seemingly distinguishable from *Clevidence* because the inordinate and unexplained 200 days of delay in *Clevidence* occurred between the end of trial and the convening authority's action while the *Sutton* 313 days of delay occurred between the convening authority's action and the supervisory authority's action.[4] Yet, the Court of Military Appeals agreed in *Sutton* that any distinction in the specific prejudice asserted, whether it resulted from a delay that occurred between the end of trial and the convening authority's action or between the convening authority's action and that taken by the supervisory authority, was "immaterial." *Id.,* 15 M.J. at 236.

Of significance in those two cases is the fact the Court of Military Appeals placed great weight on the status of the offenses for which Clevidence and Sutton were convicted. Clevidence was convicted of what the Court considered less serious offenses while those of which *Sutton* was convicted were classified by the Court as "routine military offenses." After concluding that the post-trial delay was inordinate and unexplained and because the offenses involved were not more serious, the Court apparently decided to use these cases as a necessary vehicle to issue a warning "[b]ecause unreasonable post-trial delay seems to be a recurring problem...." *Id.,* 15 M.J. at 19.

Similarly, in the case before us, appellant has claimed that the offense for which he was convicted was not a serious offense and that there is no logical distinction in the prejudice to him resulting from delay occurring between the date of trial and the date the convening authority took his action, and delay occurring between the date of trial and the date his case was forwarded for docketing before the Court of Military Review. In making his assertions, appellant challenges the precedent of this Court as set forth in *Halcomb;* but ignores the fact that *Halcomb* relies on the precedent set forth in the Court of Military Appeals' *Green* decision. Only *Halcomb* has addressed the issue of speedy review at the appellate level since *Clevidence* and *Green,* and, relying entirely on *Green,* found "no valid basis for distinguishing" the facts in *Halcomb* from those described in *Green.*

In *Clevidence* the Court of Military Appeals stated:

We are reluctant to dismiss charges because of errors on the Government's part and we would especially hesitate to do so if the case involved more serious offenses. (Footnote omitted.) However, it seems clear that unless we register our emphatic disapproval of such "inordinate and unexplained" delay in a case like this, we may be faced in the near future with a situation that would induce a return to the draconian rule of *Dunlap.*

*Id.,* at 19.

The Court was similarly disposed in *Sutton.* In *Green,* however, the Court of Military Appeals stated:

Because there are no errors in the trial proceedings requiring further corrective action, the Government's delay in forwarding the petition does not require reversal of the conviction. We emphasize, however, that the failure to forward the

---

**3.** Clevidence was convicted of two specifications of failing to repair, one specification of disrespect to a superior commissioned officer, and four specifications of failure to obey lawful orders, in violation of Articles 86, 89, and 92, UCMJ, 10 U.S.C. §§ 886, 889, 892, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor and forfeiture of $279.00 pay per month for three months.

**4.** Clevidence and Sutton were tried and action in their cases was taken prior to the implementation of the 1984 Manual for Courts–Martial provisions eliminating the supervisory authority review requirement.

appellant's original petition is in no way condoned by this Court. Such negligence only serves to discredit the military justice system.

*Id.,* 4 M.J. at 204.

Furthermore, this Court stated in *Halcomb,* 25 M.J. at 752:

> ... a harsh rule mandating dismissal of charges in this type of case will not preclude the delay caused by the unfortunate and, indeed, deplorable administrative oversight that apparently occurred here. Therefore, we refuse to dismiss the charges.

■ Appellant nevertheless intimates that despite the *Timmons–Green–Halcomb* line of cases, and in light of the holdings of the Court of Military Appeals in *United States v. Clevidence,* 14 M.J. 17 (C.M.A.1982) and *United States v. Sutton,* 15 M.J. 235 (C.M.A.1983), this Court should reject the precedent and expand the Court of Military Appeals concept to include dismissal of charges based upon inordinate delay in the review process upon a showing of specific prejudice. This is so, he argues, not because of the invalidity of his conviction, the inappropriateness of his sentence, or his potential inability to present his case adequately at a rehearing, but because of the fact that he has been denied employment and educational benefits as a result of not being able to show prospective employers or educational authorities a DD 214. (We judicially note that a DD 214 will not be issued to appellant until appellate review of his case has been completed.) Appellant contends that no logical basis exists for the distinction made in law, *i.e., Halcomb,* between the inordinate delay before and after the convening authority's action, since the prejudice to him, with regard to the adverse effect the delay has had on his inability to produce evidence of his discharge from the Naval Service is the same. He essentially is asserting that *Halcomb* wrongly interpreted the implications of *Clevidence* and *Sutton.*

■ In general, we agree with appellant that if the prejudice he allegedly suffered was as a result of the lack of a DD 214, the type of discharge notwithstanding, no difference logically would seem to exist between inordinate delay occurring before or after the convening authority's action. *See United States v. Sutton,* 15 M.J. 235 (C.M.A.1983); *United States v. King,* 18 M.J. 535 (AFCMR 1984). *Cf., United States v. Rose,* 16 M.J. 568 (ACMR 1983). This Court is presently bound, however, by the precedent set by the Court of Military Appeals, *United States v. Jones,* 23 M.J. 301 (C.M.A.1987); Article 66(c), 10 U.S.C. § 866(c), and that Court has held that post-convening authority delay at the appellate level "does not require reversal of the conviction." *Green,* 4 M.J. at 204. Additionally, this Court has previously stated that that precedent is dispositive of the issue. *United States v. Halcomb,* 25 M.J. at 751. This Court continues to adhere to its precedent and that of our supervisory court. Indeed, whether *Clevidence* should be expanded to include such specific prejudice occurring after the convening authority's action because of inordinate and unexplained delay at the appellate level is a matter that can only be resolved by the Court of Military Appeals.

This required adherence to precedent is understood and accepted as the only efficient and consistent means for the military justice system to operate with any semblance of uniformity and dependability. Our decision is also based upon our rejection of the concept that we must accept, on its face and without critical scrutiny, a factually vague affidavit incapable of substantiation, as a sufficient basis for reversal of an otherwise error-free approved conviction, solely to "punish," or "to make a point with" subordinate authorities, in the absence, of course, of a showing of bad faith on the part of the Government.

### III

We note two matters tangential to this issue that concern us. First, we reiterate the admonition of the Court of Military Appeals in *Green:*

> Because there are no errors in the trial proceedings requiring further corrective action, the Government's delay in for-

warding the petition does not require reversal of the conviction. We emphasize, however, that the failure to forward the appellant's original petition is in no way condoned by this Court. Such negligence only serves to discredit the military justice system.

4 M.J. at 204.

Second, this Court is troubled by the confirmation of the prediction that Judge Cook made in his dissent in *Clevidence:*

Here the majority has fashioned a dramatic departure from [the prejudice must appear from the record of trial] rule. The prejudice found—accused's alleged difficulty in obtaining "good" employment because of the possibility of being returned to active duty—is highly speculative, easy to assert and difficult, if not impossible, to disprove. No doubt we will see more of such assertions in future cases.

14 M.J. at 20.

▮▮▮▮ Since *Clevidence* and *Sutton,* the courts of military review have been wrestling with the issue of post-trial delay resulting in specific prejudice as claimed by appellants in affidavits submitted to the courts in support of assignments of error asserting denial of speedy review. *E.g., United States v. King,* 18 M.J. 535 (AFCMR 1984); *United States v. Bourgette,* 27 M.J. 904 (AFCMR), *pet. granted,* 27 M.J. 401 (C.M.A.1988); *United States v. Holloway,* No. 88–1973 (NMCMR 10 November 1988). As a result of the submission of affidavits by appellants, the courts of military review have been subjected either to assertions of vague facts and very generalized statements of prejudice or to a running battle of affidavits between appellant and the Government, all predicted by Judge Cook in his dissent in *Clevidence.* We believe that for this Court to find that inordinate and unexplained delay in the appellate review process resulted in specific prejudice to an appellant, it can do so only upon facts which it finds supported in the record. *See* Article 66(c), Uniform Code of Military Justice, 10 U.S.C. § 866(c). We also believe that, pursuant to our fact-finding responsibility under Article 66(c), UCMJ, we are not required to accept without question an appellant's vague and unsubstantiated assertions as factually sufficient to establish specific prejudice if they are unsupported by the record.[5] We particularly reach that issue in appellant's case because of the nature of his affidavit. It is vague with regard to the employment he sought and the educational institutions that allegedly denied him educational benefits. It is also extremely vague as to how he was prejudiced. He asserts that his denied employment and educational benefits were due to his failure to have a DD 214 to show the prospective employer or educational institution. Yet this Court judicially notes that (1) punitive discharges have adverse consequences on employment opportunities and educational benefits;[6] (2) the DD 214

---

**5.** We suggest that where inordinate post-trial delay is alleged to have caused an appellant specific prejudice, several means are available to appellant for bearing his burden of establishing that he has been specifically prejudiced:

    a. Appellant or his counsel could file with this Court, copy to appellate Government counsel, a bill of particulars providing names of potential employers/college, addresses, telephone numbers; citations to statute, regulation, or other authority or copy of form/application that would provide sufficient information by which the statement of facts and claims of prejudice made by appellant in his affidavit can be corroborated; or,

    b. Appellant or his counsel could file with this Court, copy to appellate government counsel, affidavits from potential employer/college officials corroborating that appellant's opportunities with them were prejudiced because he did not have his discharge papers and that had he

been able to produce them he would have been hired/accepted regardless of the type of discharge he, in fact, was probably going to receive.

    c. Appellant or the Government could move this Court to order the taking of depositions.

    We remind appellants in general, however, that we have not addressed the issue of whether specific prejudice other than that cited by the Court of Military Appeals in *United States v. Green,* 4 M.J. 203 (C.M.A.1978), is a viable allegation of error for which a remedy is required in light of the fact that punitive discharges and felony convictions, per se, have adverse consequences and adverse consequences are natural and foreseeable results of having been convicted of a crime.

**6.** *United States v. Monett,* 16 U.S.C.M.A. 179, 36 C.M.R. 35 (1966). We particularly note that appellant is not contesting the appropriateness

records the type of discharge received by the servicemember; and, (3) in appellant's case the DD 214 would indicate a bad-conduct discharge. Therefore, appellant's inability to show a DD 214 may not, in and of itself, have had any more adverse effect on his employment opportunities or educational benefits than if he had shown them the DD 214 reflecting a bad-conduct discharge. Thus, he has not established a causal connection between the allegation of specific prejudice and the inordinate and unexplained delay.

This Court will hold the Government accountable, where appropriate, and as it has in the past, for its negligence in the handling of a case at the appellate, or any other review, level. *See, e.g., Halcomb*, 25 M.J. at 752; *United States v. Randolph*, 18 M.J. 633 (NMCMR 1984); *United States v. Simmons*, 20 M.J. 567 (NMCMR 1985); *United States v. Canty*, No. 87–3910 (NMCMR 26 October 1988); *United States v. Abernathy*, No. 87–3174 (NMCMR 15 April 1988). It cannot do so, however, on the basis of the submission of an affidavit that does not sufficiently demonstrate specific prejudice.

While inordinate and unexplained delay must be eliminated, valid convictions must not be set aside based solely upon the uncorroborated and factually vague affidavit of an appellant whose credibility is subject to challenge not only because of his court-martial conviction, but because of his inherent self-interest. Obviously, an appellant will not be inclined to submit incomplete or even untruthful affidavits if they are subject to independent corroboration or rebuttal by the opposing party; on the other hand, the risk to an appellant in submitting vague and possibly untruthful affidavits if they will not be subjected to corroboration is minimal. Unless the Government is afforded the opportunity, if it so desires, to pursue the factual basis

underlying the claimed prejudice set forth in an appellant's affidavit, this Court is placed in the untenable position of having to accept or reject appellant's unsubstantiated assertions at face value. If the Government is afforded the opportunity to test for credibility, but in any given case, chooses not to exercise that opportunity, or having exercised it, substantiates the facts to its satisfaction, then this Court can, without hesitation, weigh the credibility of the facts asserted in accordance with its Article 66(c), UCMJ, responsibility. In sum, a reversal under the circumstances presented in this case would not accord with the proper administration and maintenance of military justice.

Accordingly, we hold that absent a showing of bad faith on the part of the Government in the appellate review of his case, appellant bears the burden of establishing specific prejudice. Appellant's affidavit asserting factually vague and generalized conclusions, incapable of factual corroboration, does not provide a sufficient basis upon which this Court can make appropriate findings of fact that would support any finding of specific prejudice. Article 66(c), UCMJ. *Cf. Bourgette*, 27 M.J. 904 (AFCMR 1988).

While this Court could affirmatively seek facts by ordering the taking of depositions or order an evidentiary hearing of the type envisioned in *United States v. Dubay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), and thus possibly resolve the Court's fact-finding problems in some cases, we do not see either of those alternatives as the proper resolution in a case, such as this, where the appellant bears the burden of demonstrating specific prejudice and has not sufficiently borne that burden. *See Bourgette*, 27 M.J. at 906.

In summary, we conclude first, that appellant is not entitled to relief because no prejudicial error occurred during the appel-

---

of the sentence adjudged and approved by the convening authority. In fact, appellant requested to be discharged from the U.S. Navy during the sentencing phase of his court-martial. R. 19. He also indicated that he no longer wished to serve under any circumstances and we believe that his unsworn statement could properly

be interpreted as his having no rehabilitative potential. Additionally, the defense presented documentary evidence supporting appellant's unfitness for duty due to a personality disorder. Accordingly, we find that appellant is not contesting the adverse consequences of a bad-conduct discharge *per se.*

lant's court-martial proceedings. Second, appellant is not entitled to relief because there was not inordinate delay at the court-martial proceedings. Third, although appellant may have been prejudiced during the period of inordinate delay that occurred between the time the convening authority took his action and the day the case was docketed before this Court, the appellant's asserted specific prejudice is not a sufficient ground for dismissal of the charges because it does not relate to an error in the trial proceedings that requires corrective action such that he would be prejudiced in the presentation of his case at a rehearing nor has he shown that no useful purpose would otherwise be served by continuing the proceedings. And, fourth, even if the specific prejudice asserted by the appellant was a sufficient ground for dismissal, the affidavit submitted by appellant in support of his assignment of error is insufficient because it is factually vague, states general conclusions, and fails to establish that the specific prejudice asserted has resulted from the inordinate delay in obtaining his discharge certificate.

Accordingly, we affirm the findings and, upon reassessment, the sentence as approved on review below, is also affirmed.

Chief Judge BYRNE and Judge JONES concur.