**UNITED STATES**

v.

**Chauncey B. DUPREE, 458–39–6175 Airman (E–3), U.S. Naval Reserve.**

**NMCM 90 3006.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 23 June 1989.

Decided 30 July 1993.

LT James R. Crisfield, Jr., Appellate Defense Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Before FREYER, WELCH and LAWRENCE, JJ.

PER CURIAM:

Appellant pled guilty to willfully damaging Government property, in violation of Article 108, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 908. The military judge sentenced him to a bad-conduct discharge, confinement for 90 days, forfeiture of $300.00 pay per month for 3 months, and reduction to pay grade E–1. The convening authority approved the sentence and ordered it executed.

Appellant now assigns two errors.[1] We find no merit in either.

■ The first asserts that appellant was denied a sufficiently speedy review. Appellant was sentenced on 23 June 1989. The record of trial was authenticated by the military judge on 3 August 1989, and a copy of it was served on appellant on 7 August 1989. Trial defense counsel submitted a clemency request on 14 August 1989. The legal officer issued his recommendation on 29 August 1989; a copy was sent to trial defense counsel that date. On 30 August 1989, the petition for clemency was denied. Trial defense counsel received his copy of the recommendation on 5 September 1989. The court-martial order further indicates that defense counsel had no corrections, challenges, or comments to the recommendation. To mid-September of 1989, review had proceeded with reasonable diligence.

The record then was lost. It was reconstructed and authenticated by the trial counsel on 6 September 1990. The court-martial order is undated, and no separate convening authority's action exists in the record. Finally, on 11 September 1990, the record arrived at the Navy–Marine Corps Appellate Review Activity.

■ In deciding the first assigned issue, we must first determine whether inordinate delay occurred prior to or after the convening authority took action on the case. This necessity turns on two different principles of law. The first pertains to delays occurring in initial review of the record prior to the convening authority's action on the case. Such delays merit relief if "an unjustified and inordinate delay in the review of a record resulting in demonstrable prejudice to an appellant requires reversal of the conviction." *United States v. Echols*, 17 M.J. 856, 857 (N.M.C.M.R.1984).

■ Delays occurring after the convening authority has acted are analyzed according to *United States v. Dunbar*, 28 M.J. 972, 975 (N.M.C.M.R.1989), *aff'd*, 31 M.J. 70 (C.M.A.1991). This Court in *Dunbar* held that even if prejudice occurred as a result of inordinate delay after the convening authority's action, "dismissal of the charges is appropriate *only* if some error at the trial level requires corrective action and the appellant would be prejudiced in

1. I. APPELLANT HAS BEEN DENIED SPEEDY REVIEW OF HIS COURT–MARTIAL BASED UPON THE COMMAND'S LOSS OF THE RECORD OF TRIAL AND SUBSEQUENT TWO YEAR DELAY.

II. AN UNSUSPENDED BAD–CONDUCT DISCHARGE WAS INAPPROPRIATELY SEVERE UNDER THE CIRCUMSTANCES.

the presentation of his case at a rehearing or when no useful purpose would otherwise be served by continuing the proceedings." 28 M.J. at 975.

■ A finding of prejudice is a foundational requirement under either standard. For delays occurring prior to the convening authority acting on the case, the prejudice need not relate to legal issues but may be personal prejudice to the accused in the form of diminished employment opportunities or other demonstrated prejudice flowing from the delay. To satisfy this requirement, appellant submitted an unsworn, handwritten letter to defense counsel. From it, we distill three allegations of prejudice that are pertinent if an inordinate delay occurred prior to the convening authority's action. First, because he could not show a DD Form 214 proof of discharge from the Naval Service, appellant could not find employment with airline companies. Second, without a DD Form 214, he could not obtain unemployment benefits. Lastly, not having a final DD Form 214 resulted in appellant's denial of educational G.I. Bill benefits by the Veterans Administration.

The first of these allegations of prejudice is clearly fatuous. Had appellate review occurred with breakneck speed, appellate would have conducted his job search armed with a DD Form 214 that showed that he was discharged from the Naval Service with a bad-conduct discharge. From our collective experience in employment in this country, we know that most employment applications request information about military service and character of discharge as well as the nature of any criminal convictions. Any answer indicating the completion of military service would prompt an inquiry into the character of that military service. Thus, had appellant promptly received the DD Form 214 he alleges he needed so badly to obtain employment, even the dullest employment officer in any airline company would have asked why appellant received the bad-conduct discharge. A truthful answer would not have helped his employment opportunities.

Appellant was convicted of having purposely damaged a power turbine blade in the number one engine of an SH–3D aircraft, the cost of repair being about $2000. His motive was derived from stressful working conditions, long hours, and family problems. Aggravation witnesses indicated that, although he reported the damage the next day, he did not admit to having caused the damage until much later. His failure to disclose his acts resulted in lessened trust among members of the unit and anxiety about the reliability of other equipment.

Presumably civilian airlines would be hesitant, to say the least, about employing a person who has a criminal conviction for secretly damaging a government aircraft. Nor would passengers with that airline be reassured about the safety and reliability of their airplane if they learned that it had been serviced by a person with appellant's record. In short, we cannot imagine how appellant's possession of his DD Form 214 could have enhanced his employment opportunities with any airline.

As to appellant's supposed inability to obtain unemployment benefits because he had no DD Form 214, this general assertion of prejudice is very similar to the one rejected in *Dunbar*. Appellant's letter does not indicate the state where the benefits were denied or the statutory or regulatory provision that denies them to him. We note only that appellant did not need a DD Form 214 to establish his status; under current directives he would have been given a final leave and earning statement when he began appellate leave and a military identification card over-stamped with the words "Appellate Leave." *See e.g.*, Naval Military Personnel Command Instruction 1900.2a, of 5 March 1990, Subj: Navy Appellate Leave. It is unclear to us why receipt of the DD Form 214 is a prerequisite for obtaining unemployment benefits. We will not find prejudice based on such a vague and unverifiable claim.

As to appellant's alleged problems in securing educational G.I. Bill benefits, we note that appellate review of courts-martial involving an approved punitive discharge

commonly is completed many months after trial. If the case goes to the Court of Military Appeals, the punitive discharge will not be executed until that Court has acted, often a couple of years after the completion of the trial. The Court in *Dunbar* noted that the DD Form 214 is issued only after completion of appellate review. Thus, virtually all persons whose court-martial sentence includes an approved bad-conduct discharge who do not waive appellate review of their case live for a lengthy period in civilian life without possession of the DD Form 214. If lack of a DD Form 214 resulted in appellant being denied G.I. Bill benefits, that prejudice is undoubtedly the result in virtually all cases involving an approved punitive discharge. Finally, no information has been provided to us about the extent of educational G.I. Bill benefits that survive the receipt of a bad-conduct discharge for an offense such as the one appellant committed. We will not find prejudice based on appellant's general assertion and our speculation about the effect of an executed bad-conduct discharge on educational G.I. Bill benefits. Appellant has the burden of showing demonstrable prejudice; this handwritten letter does not meet that burden.

Appellant's assertions of prejudice are as vague and unsubstantiated as those alleged by the appellant in *Dunbar*, indeed in most respects they mirror those allegations. 28 M.J. at 980–81. The Court described these allegations as "factually vague and generalized conclusions" that did not support a finding of specific prejudice. *Dunbar* set out several methods by which prejudice could be demonstrated, 28 M.J. at 980 n. 5., none of which was employed in this case. This Court's decision was upheld by the Court of Military Appeals in *United States v. Dunbar*, 31 M.J. 70 (C.M.A.1990). That Court labeled such claims as "unverified and unverifiable." 31 M.J. at 73. We come to the same conclusion that this Court and the Court of Military Appeals came to earlier, thus, even if the majority of this delay occurred prior to the convening authority's action, dismissal of the charges is not warranted.

Further, we find it more likely than not that the great majority of the delay in reviewing this case occurred after the convening authority had taken his action. By mid-September of 1989, defense counsel had waived comment on the recommendation. Nothing more needed to be done before the convening authority could take action on the case. In our experience, receipt of the waiver from defense counsel usually results in the convening authority's taking action promptly to effect the reduction in pay grade and to commence forfeiture of pay. Further, the convening order was signed in May of 1989 by the same officer who signed the promulgating order. Certainly, the same officer may have remained at the command 16 months later when the record was reconstructed, but this fact suggests that the promulgating order was signed shortly after trial defense counsel waived comment on the recommendation. Finally, the promulgating order number 1–89 suggests that it was the first order prepared and signed in 1989 since the latter number usually represents the year in which the order is prepared and signed. Thus, we find by a preponderance of the evidence that the promulgating order was prepared and signed in late-September or early October of 1989.

Since the inordinate delay in this case occurred after the date of the convening authority's action, the rule of *Dunbar*, not *Echols*, is controlling. Appellant does not contend that some error at the trial level requires corrective action, and we find no such error. We find no other reason for discontinuing appellate proceedings in this case. Thus, under *Dunbar*, the delay does not mandate dismissal of the charges.

The second assignment of error is likewise without merit.

That portion of the convening authority's action that purports to order the bad-conduct discharge executed is a nullity. The findings and the sentence as approved on review below are affirmed.

FREYER, Senior Judge, concurs.*